EDWARD KENNARD *versus* WILLIAM BURTON.

The father of a minor daughter, living with and performing labor for him, may, under the provisions of Rev. Stat. c. 26, maintain an action against an individual to recover damages sustained by the plaintiff in the loss of the services of the daughter, occasioned by an injury caused by the negligence or misconduct of the defendant, whereby a collision took place between his wagon and that in which the daughter of the plaintiff was, upon the public highway, by which she was thrown from the wagon and injured.

Evidence of the complaints of suffering made by the daughter of the plaintiff, after receiving an injury from the collision of two wagons upon the public highway, but during the time when it was material to prove such suffering to have existed, is admissible.

When persons meet and pass each other upon the public highway, it is, by Rev. Stat. c. 26, the duty of each " to drive to the right of the middle of the traveled part of the road or bridge, when practicable." And when it is not practicable, that is, when it is difficult or unsafe for him to do so on account of his vehicle being heavily loaded or for other cause, he should stop a reasonable time at a convenient part of the road, to enable the other person to pass, and without any request from him.

Where two persons meet when traveling in their respective wagons upon the public highway, and a collision takes place, and one of them is thereby thrown from his wagon and injured; in order that the person injured should maintain an action for the damages sustained by him, the injury must not have been caused by any want of ordinary care on his part to avoid it, although he was traveling in the manner prescribed in Rev. Stat. c. 26, and the other party was not.

The rule is, that if the party injured, by want of ordinary care contributed to produce the injury, he will not be entitled to recover; but if he did not exercise ordinary care, and yet did not by the want of it contribute to produce the injury, he may recover.

THIS was an action of the case, wherein the plaintiff claimed damages for the loss of service of his daughter Caroline, and for medical aid furnished, occasioned by an injury as was alleged, caused by the carelessness and improper conduct of the defendant, while traveling upon the highway in Gorham, on Nov. 7, 1843.

It appeared that upon that day, the plaintiff's daughter Caroline, eighteen years of age, and Mrs. Tukey were riding from Westbrook to Gorham together in a wagon, and met the defendant, who was driving a team of two horses in a wagon loaded with barrels of potatoes, and was sitting upon the

barrels; that he was driving so near the side of the road on his left, that the wagon in which Caroline and Mrs. Tukey were, was obliged to be, and was, turned out of the traveled part into the ditch, in passing the defendant; that the defendant passed on, without stopping or turning out, in the centre of the highway; and that in attempting to get by, the fore wheel of the wagon of Mrs. Tukey and the plaintiff's daughter struck the hind wheel of the defendant's wagon, and they were both thrown out of the wagon on the right side thereof, and there the injury was sustained.

Mrs. Tukey testified, that on their return home the same day, Caroline complained of great pain from the injuries she had received from being thrown out of the wagon. This testimony was objected to by the counsel for the defendant. WHITMAN C. J. before whom the trial was had, admitted it.

There was testimony introduced on the part of the defendant, tending to show that the other wagon might with ordinary care have passed him without danger, and that his wagon had a heavy load thereon.

1. The defendant's counsel requested the Court to instruct the jury, that where two carriages meet and one is in the centre of the highway and is heavy laden, and it is difficult for it to turn out, and the other, a light carriage, undertakes to go by without requesting the driver of the heavily laden one to turn out, and a collision takes place, the person who drives the heavily laden wagon is not liable for the damages. The Court declined to give this instruction.

2. The defendant further requested the Court to instruct the jury, that in such a case as above stated, if there is a sufficient space in the highway for the carriage which undertakes to go by, to do so, the party driving the heavily laden wagon is not responsible for the collision. The Court declined to give such instruction.

3. The defendant further requested the Court to instruct the jury, that if the defendant did not turn out nor stop his wagon, yet if the plaintiff's daughter in going by, through negligence and want of ordinary care, drove her wagon on to the

Kennard v. Burton.

wagon of the defendant, the defendant is not liable in this action. The Court declined to give said instruction.

4. The defendant further requested the Court to instruct the jury that as there was no proof of any medical advice or services procured for the daughter in consequence of any injuries received, the plaintiff could recover nothing more than the value of the loss of his daughter's services. The Court declined to give said instruction; and instructed the jury, that they would not be confined to giving damages for the mere pecuniary loss, but might give damages to the plaintiff for the loss of his daughter's society, and the comfort arising from it.

And the Court further instructed the jury that if the defendant was in the centre of the traveled part of the road, and it was difficult for him to turn out, if he did not stop his team, when the plaintiff's daughter undertook to go by, although there might be sufficient space in the highway for her wagon to pass by the defendant's wagon, it would not prevent the defendant from being liable in this action for any injury which happened by the collision, and that the damages might be enhanced, if the injury was wantonly inflicted; and that the jury might judge of the recklessness of the defendant by his conduct, by the indifference which he manifested after the injury occurred; by his taking no pains to ascertain the extent of the injury which he had occasioned; and by his not descending from his load to afford them aid; that the cases read to the jury of *Smith* v. *Smith*, 2 Pick. 621, and *Butterfield* v. *Forrester*, 11 East. 60, had no application in principle to the present case.

5. The defendant further requested the Court to instruct the jury that if there was negligence on the part of the defendant and the plaintiff's daughter was injured, still the defendant is not liable, if by using ordinary care the plaintiff's daughter might have avoided the collision. This instruction the Court did not give.

To which ruling and instructions and refusal to instruct the defendant excepted.

*Wells* and *Sweat*, for the defendant, contended, that the action could not be maintained in the name of the father. The statute, Rev. St. c. 26, § 6, gives the action only to the "person injured." The language of the St. c. 25, § 89, varies only in saying that, "if any person shall receive any bodily injury, or shall suffer any damage in his property." If this last applied to an injury by a person, instead of one arising from a defect in a highway, it would not aid the plaintiff, for the daughter cannot be considered as "his property." They relied upon *Reed* v. *Belfast*, 20 Maine R. 246, as directly in point; contending that there was no difference in the meaning of the two statutes in this respect.

The testimony of Mrs. Tukey in relation to the complaints of the plaintiff's daughter, on their return home, of the injuries previously received, was improperly admitted. They were made hours after the accident happened, and were no part of the *res gesta*. 8 Pick. 122 ; 24 Pick. 246 ; 1 Stark. Ev. 247 ; 1 Greenl. Ev. § 102.

It was the duty of the plaintiff's daughter to have passed the plaintiff on the side where there was ample room for her to have done so, and to have passed in safety. It was not the duty of the defendant, with his heavily loaded wagon, to turn out of the path, whenever he saw a horse wagon approaching. Even if such was his duty, when required by the other party, it could not be so without such request. By the omission of such request, and by proceeding without requiring him to turn out or stop, the plaintiff's daughter waived any right to have the defendant do so, if she had the right to require it. 2 Taunt. 314 ; 5 Car. &. P. 379.

Whether it was, or was not the duty of the defendant to turn out, the plaintiff's daughter and her companion in the wagon were bound to use ordinary care and diligence in driving, and not wantonly to run into danger, even if the other party should have conducted differently. 24 Com. L. R. 301 ; 38 Com. L. R. 245 & 248 ; *Lane* v. *Crombie*, 12 Pick. 177 ; *Crumpton* v. *Solon*, 2 Fairf. 335 ; *Palmer* v. *Barker*, 2 Fairf. 338 ; *French* v. *Brunswick*, 21 Maine R. 29 ; 2 N. H. R.

392 ; 19 Wend. 399 ; 24 Wend. 465 ; 7 Pick. 188. And the burthen of proof is on the plaintiff to establish the fact, that ordinary care has been used by the party alleged to have been injured.

The ruling of the presiding Judge upon the subject of damages was erroneous. 3 Stark. Ev. 1454; *Rising* v. *Granger*, 1 Mass. R. 47; *Dickinson* v. *Boyle*, 17 Pick. 78.

*Howard & Shepley* argued for the plaintiff, contending: that the testimony objected to, was rightly admitted. When the bodily or mental feelings of an individual are material to be proved, the usual expressions of those feelings, made at the time they would be likely to exist, are admissible as original evidence. 1 Greenl. Ev. $ 102.

It is said, that this action cannot be maintained, because the injury was not a personal one to the plaintiff, and the case of *Reed* v. *Belfast* is cited to maintain this position. That decision was under a different statute, having entirely different language from the one under which this suit is brought. The statute confines the action against towns to a particular species of injury ; but a person sustaining any injury may maintain a suit against the person causing it. The words of a statute are to be taken in their usual acceptation ; and we are to look only to the usual common law mode of ascertaining the meaning of the word, injury.

The requests to give instruction were properly refused. One sought to have the Judge instruct the jury, that certain cases in the Reports were applicable to the present one, instead of requesting to give as an instruction a principle of law. This is a sufficient cause for refusal. But the cases were not applicable. Those were cases where the party injured wantonly ran upon the carriage of the other. The law on this subject is not correctly stated in any one of the requests, where it is applicable to the present case. They are all objectionable on the ground, that they request instructions upon questions merely speculative.

First request. The statute is imperative, that it is the duty of each of the persons meeting with vehicles upon the public highway to turn to the right, or stop. A request to stop is

necessary only when one overtakes another in passing the same way.

Second. This is understood to mean, that it was the duty of the plaintiff's daughter to have turned to the left of the defendant's wagon, and passed there, had there been room. It is to request the court to instruct the jury, that it was her duty to have violated the express provisions of the law, to enable her to recover of the defendant the damages caused by his misconduct. In endeavoring to do this, and to escape injury from the defendant, she would be exposed to strike against some one legally passing on the other side, and in doing which she would be clearly a trespasser.

Third. The state of facts in this case does not call for this instruction. The injury was occasioned by the refusal of the defendant to turn to the right, and thus enable the plaintiff's daughter to pass on the side the statute requires. It could be no evidence of want of care, that she did not cross over to the left, and pass there, or go out of her proper path.

The fifth states the same principle with some variation. There is, however, no difference in substance. The defendant's wagon must do as it did, or pass to the other side of the way. Besides, when the defendant was out of his proper place, and on the very part of the road where the plaintiff had the right to be, and was required by law to be, he was guilty of a wrong, and had no right to require the women in the wagon to go out of their course to avoid him, or to make use of the care which might be required, if he had been rightly there. The state of facts, exhibited by the testimony in this case is such, that the question, whether due diligence to avoid the defendant was used or not, was not properly before the jury.

The principles laid down by the presiding Judge upon the subject of damages were correct. 3 Esp. R. 119·; 3 Wils. 18; 11 East, 23; 2 T. R. 4.

The opinion of the court was drawn up by

SHEPLEY J. — This suit arises out of a collision of the wagons, in which the plaintiff's daughter and the defendant

were traveling on the highway. The Statute, c. 26, prescribes certain duties to be performed by those, who thus travel; and provides by the sixth section, that "any person injured by any of the offences or neglects aforesaid shall also be entitled to recover his damages in an action on the case to be commenced within one year after such injury."

The counsel for the defendant contend, that the design of the statute was not to make those offending against its provisions liable for any other than direct injuries to the person or property of another; and that the services of a child during infancy cannot be considered the property of the father. They rely upon the case of *Reed* v. *Belfast*, 20 Maine R. 246. It was a different statute, containing different language, which received a construction in that case. That statute authorized a person, who had received an "injury in his person, or in his horse, team, or other property," occasioned by a defect of a highway, to recover damages. The manner, in which he must receive the injury, was prescribed by the statute; and the word injury was considered as thereby limited to the class of injuries named. In the clause of the statute now under consideration the word *injured,* is not limited by any other words used in connexion with it. There is nothing in the other sections of the statute, which can have that effect. It was the design of the statute to regulate the conduct of such persons, not to abridge any rights, which they might have by the common law. When the inquiry arises, what constitutes an injury, the common use of language and the common law must decide. There can be no other safe guide. Their decision would be, that the loss of the services of a child would be an injury to the father. The case of *Williams* v. *Holland*, 6 C. & P. 23, cited by the council for another purpose, exhibits a case of recovery of damages for an injury occasioned by a collision on a highway to the son of the plaintiff, as well as to his cart. In the case of *Hall* v. *Hollander*, 4 B. & C. 660, Abbott C. J. said, "it is a principle of the common law, that a master may maintain an action for a loss of service sustained by the tortious act of another, whether the servant be a child or not;" although

the action in that case could not be maintained, because the child was too young to be able to perform any service.

The counsel also insist, that the complaints of suffering made by the daughter after the injury, and her description of the place injured, were improperly admitted.

The rule, as stated in Greenl. Ev. § 102, is, that " whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence." By the time in question, is not intended the time of injury, but the time, when it is material to prove a condition of bodily or mental suffering. And that may be material for weeks and perhaps months after an injury has been inflicted. If other persons could not be permitted to testify to them, when the person injured might be a witness, there might often be a defect of proof. The person injured might be unable to recollect or state them by reason of the agitation and suffering occasioned by it.

Several requests were made for instructions, which were refused. The two first, intended to define the duties of persons passing each other with carriages on the highway, appear to have been founded upon a misapprehension of the duties enjoined by the statute.

When persons meet and pass each other, the first section requires, that each shall drive his " carriage or other vehicle to the right of the middle of the traveled part of such road or bridge, when practicable." When it is not practicable, that is, when it is difficult or unsafe for him to do so on account of his vehicle being heavily loaded, or for other cause, the second section requires, that he should stop a reasonable time at a convenient part of the road to enable the other person to pass. And this he should do in obedience to the statute without any request. These rules can be easily comprehended and obeyed. Those, who disregard them, cannot justly complain, when they are held responsible for any injuries, which they may thereby occasion. It appears from the testimony presented in this case, that the defendant violated them. He did not turn to the right from the middle of the traveled part of the road.

His excuse was, that his wagon was heavily loaded, that the earth was frozen, and that the wheels were in ruts, so that it would have been difficult or unsafe for him to have done so. In such case the law required him to stop a reasonable time at a convenient part of the road for the other wagon to pass; and this he did not do. The two first requests were therefore properly refused.

The third and the fifth requests present the question, whether the driver of the other wagon was not bound to exercise ordinary care to avoid an injury, although the defendant was conducting improperly. In suits against towns for the recovery of damages for injuries occasioned by defects in highways, the law is settled, that the plaintiff must shew, that the injury was not occasioned by negligence or the want of ordinary care on his own part. The same rule prevails, when the suit is brought against an individual to recover damages for an injury occasioned by some obstruction or nuisance, which he has caused to be placed in the road. *Flower* v. *Adams*, 2 Taunt. 314 ; *Marriott* v. *Stanley*, 1 Man. & Gran. 568 ; *Smith* v. *Smith*, 2 Pick. 621 ; *Harlow* v. *Humiston*, 6 Cow. 191. It prevails also in cases of collision of vessels and boats, when meeting and passing in a river or canal. *Lack* v. *Seward*, 4 C. & P. 706 ; *Luxford* v. *Large*, 5 C. & P. 421 ; *Sills* v. *Brown*, 9 C. & P. 601 ; *Raisin* v. *Mitchell*, Id. 613 ; *Vennall* v. *Garner*, 1 Crom. & Mee. 21 ; *Rathbun* v. *Payne*, 19 Wend. 399. It would seem, that a somewhat modified rule might prevail in admiralty in cases of collision of vessels upon the high seas. When the injury was occasioned by a want of skill or ordinary care in the management of each vessel, Lord Stowell considered, that the loss should be apportioned between them. The Woodrup Sims, 2 Dodson's R. 83.

The duties required of each party, in cases of injury by collision and otherwise on the highways, have often been discussed in the decided cases. In the case of *Knapp* v. *Salsbury*, 2 Campb. 500, there was a collision of a post chaise and a cart. Lord Ellenborough said, " if what happened arose from inevitable accident, or from the negligence of the

plaintiff, to be sure the defendant is not liable." In the case of *Jones* v. *Boyce*, 1 Stark. R. 493, the coupling rein broke, one of the leaders became ungovernable, the coachman drew the carriage to one side of the road, where it came in contact with piles, one of which it broke, and the wheel was stopped by a post. The carriage was not overturned. The plaintiff being alarmed jumped from the top of it, and his leg was broken. Lord Ellenborough instructed the jury, if they should be of opinion, that the reins were defective, the inquiry would be, " did this circumstance create a necessity for what he did, and did he use proper caution and prudence in extricating himself from the apparently impending peril." In the case of *Chaplin* v. *Hawes*, 3 C. & P. 554, the driver of a cart injured the plaintiff's horse, rode by his servant, while the cart was passing a gate on the wrong side of the road. The plaintiff's servant was rightfully on the same side of the road and about to meet and pass the cart. Best C. J. stated to the jury, " if the plaintiff's servant had such clear space, that he might have easily got away, then, I think, he would have been so much to blame as to prevent the plaintiff's recovering." In the case of *Pluckwell* v. *Wilson*, 5 C. & P. 375, there was a collision of the chaise of the plaintiff and the carriage of the defendant. Mr. Justice Alderson left it to the jury to say, " whether the injury to the plaintiff's chaise was occasioned by negligence on the part of the defendant's servant without any negligence on the part of the plaintiff himself; for that if the plaintiff's negligence in any way concurred in producing the injury, the defendant would be entitled to the verdict." In the case of *Williams* v. *Holland*, 6 C. & P. 23, there was a collision of the plaintiff's cart and the defendant's chaise. Mr. Justice Bosanquet told the jury, " if the injury was occasioned partly by the negligence of the defendant, and partly by the negligence of the plaintiff's son, the verdict could not be for the plaintiff." In the case of *Bridge* v. *The Grand Junction Railway Company*, 3 Mees. & Wels. 244, the injury was alleged to have been occasioned by the negligent management of a train of railway carriages; and Baron Parke said, " there

may have been negligence in both parties, and yet the plaintiff may be entitled to recover. The rule of law is laid down with perfect correctness in the case of *Butterfield* v. *Forrester*, 11 East, 60, and that rule is, that although there may have been negligence on the part of the plaintiff, yet, unless he might by the exercise of ordinary care have avoided the consequences of the defendant's negligence, he is entitled to recover. If by ordinary care he might have avoided them, he is the author of his own wrong. That is the only way in which the rule as to the exercise of ordinary care is applicable to questions of this kind."

An examination of the cases leads to the conclusion, that the correct rule is, that if the party by the want of ordinary care contributed to produce the injury, he will not be entitled to recover. But if he did not exercise ordinary care, and yet did not by the want of it contribute to produce the injury, he will be entitled to recover. In the case of *Lane* v. *Crombie*, 12 Pick. 177, the Court held, that the burden of proof was on the plaintiff to show, that the injury was not occasioned by her own negligence. In the case of *Hartfield* v. *Roper*, 21 Wend. 615, a child about two years old was in the beaten track of a highway and a sleigh and horses passed over it. It is stated in the opinion, that "it is perfectly well settled, that if the party injured by a collision on the highway has drawn the mischief upon himself by his own neglect, he is not entitled to an action even though he be lawfully in the highway pursuing his travels." In the case of *Palmer* v. *Barker*, 2 Fairf. 338, the opinion states, that when two persons are traveling in opposite directions, and are about to meet and pass each other, "in so doing both are bound to use ordinary care and caution."

The counsel for the plaintiff contend, that this doctrine should not be applied to a case, where one person is traveling on the side of the road by law assigned to him, and another is refusing to obey the law. There is, however, no good reason, why a person, who is traveling on the proper side of the road, should recover damages of one who is not, for an injury,

which his own want of ordinary care has contributed to produce. A person should not by his own negligence occasion even the misconduct of another to be productive of greater mischiefs, than it otherwise would have been, and then claim of him a compensation for the entire injury. And the common law does not attempt to apportion the loss in such cases. The wrongdoer is made responsible for his own misconduct, not for the consequences of another's neglect to exercise ordinary care.

They also contend, that the requested instructions were not applicable to the testimony in the case ; that they did not state the law correctly ; and were therefore properly refused.

The third request may be liable to the objection, that it would not have left the jury at liberty to decide, whether the alleged negligence and want of ordinary care contributed to occasion the injury. The fifth requested instruction is not liable to such an objection, for if there had been no collision, there would have been no injury occasioned by the defendant.

It is true, that the testimony might not have authorized a jury to find, that the daughter of the plaintiff by her want of ordinary care contributed to produce the injury ; but the defendant so contended, and he was entitled to have the jury pass upon it under instructions, which would have presented it more fully and perfectly to their consideration.

*The verdict is set aside*
*and a new trial granted.*