HULL (AYLING v.). See Case No. 686.

# Case No. 6,861.

## HULL v. RICHMOND.

[2 Woodb. & M. 337.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1846.

### INJURY FROM DEFECTIVE HIGHWAY—PRESCRIPTION—WIDTH OF HIGHWAY—REMEDY AT COMMON LAW—PROOF OF DAMAGES—DUTY OF DEFENDANT.

1. A notice to a town to pay damages for neglect in repairing a highway, under the stat-

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

ute of Rhode Island, is probably not necessary before suit; it being not required in connection with the statute rendering towns liable for such neglect, and being applicable in its terms rather to claims ex contractu than ex delicto.

[Cited in Holland v. Cranston, Case No. 6,-606; Heckscher v. Binney, Id. 6,316.]

2. And, if necessary, it is sufficient if stating when, how, and where the injury happened, without estimating its amount.

3. Use of a road for more than twenty years is evidence of its being a public highway, especially if yearly repaired during that time, and included within the limits of surveyors' warrants.

[Cited in Greeley v. Quimby, 22 N. H. 338; Willey v. Portsmouth, 35 N. H. 312.]

4. Its width, in such case, where not fenced out on both sides as a road, will extend the usual distance each side from the travelled path.

5. When an action for damages on such a road, by neglect to keep it in repair, is brought on a statute, the last must be followed strictly; and in this state no remedy has been held to exist at common law.

[Cited in Commissioners of Highways v. Martin, 4 Mich. 561.]

6. If the neglect to repair is averred to be on the sides, and without the travelled path, and to be injurious in turning out to go by a team with a cart-load of wood, the plaintiff must show that he exercised due care in turning out and passing by, and that the damage arose from the want of proper attention by the town to the sides of the road, and not from himself or some independent accident.

7. A town is not obliged to make the sides of all its roads passable with wheels, with safety and convenience; but it must have so much of them passable. as not to delay travellers, or endanger them, in getting by at places not very remote or very inconvenient.

[Cited in Smith v. County Court, 33 W. Va. 722, 11 S. E. 4; City of Wellington v. Gregson, 31 Kan. 103, 1 Pac. 253; Jones v. Baltimore & P. R. Co., 4 D. C. 108.]

8. The nature of the country, rough and hilly, or smooth; the amount of travel; the places near, on which carriages could be turned out; and the ordinary care exercised usually by towns on this subject, must fix whether this town was guilty, in this instance, of culpable neglect or not.

9. The rule of damages in such case, if the plaintiff recovers, is, as near as may be, the extent of the injury or loss.

10. Damages are not to be aggravated in such a case, if this road had never before been complained of, had been in this condition half a century, and no injury before had been apprehended or happened, even if it can be in any instance for mere example or vindictiveness.

[Distinguished in Sewall's Falls Bridge v. Fisk, 23 N. H. 179. Cited in Norris v. Litchfield, 35 N. H. 276.]

This was an action on the case under a statute of Rhode Island, to recover damages for an injury received by the plaintiff [Latham Hull] on what was alleged to be a highway in said town, on the 15th of October, 1845. The declaration averred, that the highway was not in good repair through the neglect of the town, and claimed damages for the injury thus caused to him to the amount of six thousand dollars. The treasurer pleaded for the town not guilty. At the trial here at this term, the plaintiff gave evidence of the use of a travelled road at the place,

where he in a one-horse wagon met an ox team, at the time alleged in the declaration; and that this use by the town and the public had existed for half a century, and that the town had usually put this road in a surveyor's warrant to be repaired, and work had been done on it for that purpose for twenty or thirty years. It further appeared, that on the sides of the travelled path, at and near this place, there was a stone fence, at the usual distance from the south side, but no fence within several rods on the north side. In order to prove the neglect of the town to repair the road at this place, evidence was offered, that, though the travelled path was smooth, the bank near the ruts, made by the wheels, was from six to twelve inches high, some loose rocks were left on it a foot high, and many shrubs and small trees, so as to make it very difficult and dangerous to turn out at that point, or any other nearer to it than three rods; and that these shrubs and rocks could be removed and the bank lowered for the expense of five dollars. at this place, so as to make it safe to turn out. Respecting the injury; it was shown, that when the plaintiff met the ox team at this place, neither the driver of that nor himself had noticed each other till within a few feet, though the road was such that persons by attention could see each other for twenty rods' distance; that convenient places to turn out existed about two rods each way from where they met; that both were in the centre of the road, though either, if seeing the other, could have turned partly out, and the other doing the same, they might have passed even at this place; that the plaintiff thought his horse would not back the wagon two rods and there turn out, as it was descending ground towards where they stood; that the plaintiff declined to unharness his horse and run his wagon out by hand, though it was not loaded, or to attempt to back it on the south side, but led his horse, holding him by the head, and the teamster assisting, over the bank and rocks on the north side. After he had got over them, and after the teamster, supposing there would be no further difficulty in passing round into the road, had taken up his goad and returned to his team, he heard a shriek, and running to the wagon of the plaintiff, he found it had gone forward about a rod, and the plaintiff lay under it with his leg broken, and the reins of his harness entangled in the bushes so as to hold fast his horse. There was no other evidence or explanation how the injury arose. The plaintiff was shown to have had good medical attention, but had undergone a confinement of several months; had suffered much pain, and was not likely ever to recover the perfect use of his leg.

Dixon & Ames, for plaintiff.

D. J. Pearce and A. Greene, for the Town.

WOODBURY, Circuit Justice, in the course of the trial, admitted a written notice, which

had been given by the plaintiff to the town, stating particularly when, how and where he had been injured, and demanding indemnity therefor. The defendants objected, that this notice was insufficient under the statute of Rhode Island, which requires before a recovery against a town for any demand whatever, a particular notice of his "debt" or "demand," and "how contracted," and that this was not sufficiently particular. But the court considered it doubtful whether any notice was necessary in this case of a suit ex delicto rather than ex contractu. Firstly, because the statute, which gave the remedy in this case, required no notice by any express terms. And if the former statute was a general one, applying to subsequent rights of action authorized like this, it was doubtful, in the next place, if it was not confined to demands in the nature of contracts and debts. It used words applicable in common parlance only to such; and such only could be described with much particularity and certainty. But if it should be considered as including demands for torts or neglects, this notice was considered as containing particulars sufficient for its object. There was no defect imputed to it in that particular, except the failure to state the amount of damages. But the plaintiff could not do that, as the damages had not then all been developed. The object of the notice, too, was not at once to get payment of a sum ascertained or liquidated as in case of debts or contracts, but to state an inquiry, which the town was to look into, and was notified to do this, and then discharge the amount. after seeing what the true damage was. Enough was stated here to induce the town to do this. if it pleased, and time enough was allowed before bringing this suit, from June to October, to enable the town to make every necessary inquiry and to settle, should it choose to do so. It would be unreasonable to require all the technicality of special pleading in such a case. Under these circumstances, we think the plaintiff is entitled to proceed so far as regards the notice.

After the arguments of counsel on the testimony, WOODBURY, Circuit Justice, charged the jury; and, in the course of his remarks, laid down the following principles of law, as to the questions arising on the merits: (1) That a road, though not proved to have been laid out by any committee, or by any survey, formally adopted by a town, might be a public highway, and a town be indictable in this state for not keeping it in good repair, or be answerable for any injury happening in it by the neglect of the town. One case of this kind would be where a road had been travelled by the public for more than twenty years before the statute of 1829, and the town not only had thus used but repaired it yearly, and included it in the limits of a warrant of one of its surveyors of highways. The width of such a road in

that part beyond the travelled path, must be governed by the fences, if near, or if not, the usual distance on road sides in this section of the country; or, in other words, the open space on each side of the travelled path, which is usually allowed in this state. The width of the travelled path to be kept in repair is, in such case, to be governed by the width which it had been customary to keep in good order. (2) The liability of the town to keep such public highways in repair, and to pay for damages by injuries on it, caused by the town's neglect, is founded, in this state and in the present case, on an express statute. It is said to have been decided in this state, that no such remedy exists at common law. See Russell v. Men of Devon, 2 Durn. & E. [2 Term R.] 667. But it has been held to exist at common law in other states, and would require consideration before deciding the point here, if necessary to decide it. But, proceeding on the statute, it is immaterial whether he has a remedy at common law or not; and hence I forbear to go into that question.

The first rule of construction in such remedy on a statute, is, that the plaintiff must follow it strictly, and bring his case within it with clearness. See cases cited in The Reindeer [Case No. 11,679] Rhode Island Dist. 1848. The neglect to keep such a road in repair, which makes a town liable here, must be a neglect to keep it so that travellers can pass and repass on it with "safety and convenience." The law says (page 318), keep "necessary" and "safe and convenient highways." This means, "safe and convenient" not only in the travelled path, by having it free from large rocks and gullies, and from an uneven surface dangerous to pass over, but we think also on the sides so as to turn out without unusual delay and difficulty when travellers meet with carriages and wagons. This does not mean, that towns must incur the expense of having the whole width of a highway, of two or four roads, passable safely with wheels on the sides, or a double track for wheels over all public roads, including causeways and bridges. This, in a rough and mountainous country, like much of New England, would vastly and unnecessarily increase the public burthens in maintaining highways. 16 Pick. 189. Some towns of six miles square have over sixty miles in length of public roads within their limits, with many bridges. And though in the place where this accident happened, the expense would have been small to level the bank, remove the large rocks and cut up the brush, yet if bound to do it in all places as well as there, the aggregate would be enormous.

What then was the true guide and test? It seems to be the public convenience and safety; and if that was insured in the travelled path. all beyond that depended on circumstances. If a road was on a steep mountain's side, or was carried up from the bed

of a stream against a steep cliff of rocks, or through a narrow notch, or gorge among the hills, a double track would seldom be expected, though places should be made at no great distances for persons to turn out entirely, and others, where by each turning out in part, each could safely pass. Some of these distances, like the Jew's Leap in Africa, or the notch of the White Hills, or some modern tunnels, might be so far apart as to require a horn to be blown, or a loud halloo made to apprize others at the other end to wait. Some of them, where the road was straight, might be seen by common vigilance for some distance as travellers approach, and a stop be made by either at the first convenient spot, for two teams to pass each other. There must be an accommodating spirit and cautious watchfulness on these matters, in order to avoid difficulties, and more especially must these be attended to in large falls of snow in winter. While, then, on the one hand, the whole width of the highway need not be made passable with two teams, where it cannot be without great expense, and especially where the country is newly settled or the travel small, yet it ought to be at places not so far from each other as to make it inconvenient for travellers to see them and stop at them if others are approaching; or to back to them if near, and not very difficult by the load or the rising of the ground. Thus on rail-roads, where a double track would be more convenient and safe, yet it is seldom resorted to; unless the travel it too great for one track, and by having turn outs, not very far distant and by backing, and being exact as to times of departure, much of the inconvenience and danger of a single track are avoided. A town must exercise ordinary or common care on this subject, considering the amount of travel, the difficulties of the geographical features of the country, and all the other circumstances, which will readily occur to practical men like those usually on our juries. And the reason why evidence was allowed to be offered here, whether this road was kept as convenient and safe in this respect as other roads near, was not that it should exonerate the town if culpable, or that it might merely mitigate the damages, if the town was found to be still liable; but to show, that the vigilance it used, was a common and ordinary vigilance; and if so, was not probably a culpable misbehavior. So, too, under this aspect, evidence was admitted, that this road had never been complained against by townsmen or strangers, though in this condition at the sides in this place for half a century, and that no accident had ever occurred there before, since the country was settled. These would all bear more or less strongly to show, that ordinary care had been used by the town in respect to it.

In the next place, if the jury should believe that an improper neglect had here happened on the part of the town, the further and a very important inquiry was, whether the injury happened from the plaintiff's own imprudence, or from that neglect of the town. He may not have been watchful enough to turn out two rods before he reached the other team, and where there was a convenient place. He may not have backed his wagon to that place when he could, after finding none convenient opposite to him. He might, as one witness swears, have backed out more easily on the south side. He might have unharnessed his horse and got by in that way, as his wagon had no load, pulling it out till the loaded carriage passed; and he may have been rash, after finding himself in such a contracted spot, to drive over the stones and brush, at all hazards, on the north side. He was bound to exercise proper vigilance and care in driving and in turning out, as well as the town in taking care of the road; and if his own misbehavior was the immediate or proximate cause of the injury, he ought not to recover for it of the town. 2 Pick. 621; Adams v. Carlisle, 21 Pick. 146; Butterfield v. Forrester, 11 East, 60. Nor ought he, if his neglect or rashness contributed to the injury, though not producing it entirely. Palmer v. Barker, 2 Fairf. 339; Rathbun v. Payne, 19 Wend. 399; Hartfield v. Roper, 21 Wend. 615; 12 Pick. 177. "If the plaintiff's negligence in any way concurred in producing the injury, the defendant would be entitled to a verdict." Pluckwell v. Wilson, 5 Car. & P. 375; 25 Me. 48; Williams v. Holland, 6 Car. & P. 23. If the plaintiff be negligent, yet could not avoid an injury by ordinary care, he may recover. Butterfield v. Forrester, 11 East, 60. The burden of proof to show his own due care is on him. 25 Me. 49; 12 Pick. 177. But he denies any neglect or wrong on his part, or if any, that it helped to cause the injury; and the jury are to weigh his facts and explanations in his vindication, and decide on them, as their weight may demand.

Finally, if the injury occurred from some cause unknown, or some accident disconnected from the neglect of the town. the plaintiff cannot recover. It happened here from no cause seen, or able to be described by any witness on the stand. To be sure it happened after he had turned out of the travelled path, and had got over the bank, the bad rocks, and into a smooth place, so as easily to return to the road again, and probably occurred by a fall, with his foot being caught and his leg bent over a rock, or by a start and blow of his horse, or by the wagon running over him when entangled by the bushes or reins. If it be quite as likely to have happened from mere accident, or the viciousness or fright of his horse, as from the badness of the road, it is not a case for subjecting the town to damages. There is much room for conjecture on this head; but jurors, as men of great observation and experience in these matters, can generally eviscerate the truth, and having

done that, it is their duty to follow it, whether it leads for the plaintiff or defendant. Sympathies in such cases are usually enlisted in favor of individuals rather than corporations; and the latter can usually bear heavy losses, divided among all their members, better than a single sufferer can. But we are not referees to apportion this misfortune in any way, except where the law shall place it, or where some positive wrong may place it. And when they interpose to place it on the plaintiff or defendant, they are to be obeyed, though at the loss and expense either of one person or many. We may and must commiserate a calamity like this, fallen on a man in the prime of life; and if others have produced it by their wrong and neglect, it is right they should atone for it; but otherwise, "the tree lieth where it falleth." If damages are given at all, the measure should be, as near as possible, the exact extent of the injury, or the whole loss by it, and no more. If the testimony is credited, that the travelled path was and had been long in good condition; that the town had never been notified of any danger or difficulty at this point out of the travelled path in passing by; that the road in this respect showed as much care and attention to the convenience and safety of travellers as was customary in that section of the country, and for one used no more extensively, it seemed to remove any ground for vindictive damages, even if it was ever proper to give them. How in strict law this last point was, need not, therefore, be here discussed or settled. See Taylor v. Carpenter [Case No. 13,785].

The jury disagreed, and were discharged. On a third trial in January, 1849, the jury agreed for the defendants.