Edward M. Horey, J.
In her complaint the plaintiff .sets forth a separate cause of action for assault and for negligence against each defendant. Similar causes of action are pleaded for five infant children of the plaintiff. In these latter causes of action the children collectively seek to recover damages by reason of deprivation of “.services and .society” of their mother due to the conduct of the denfendants.
The defendants move to dismiss those causes of action in the plaintiff’s complaint which are brought on behalf of the five infant children of the plaintiff.
The motion presents squarely (the issue of whether or not a child has a cause of action for damages for loss of services, comfort and assistance of a parent as a consequence of injury to the parent. Neither party has cited any decisional law of New York on "the precise point and the research of this court *1079 •has disclosed none. The issue appears to be one of the first impression in this State.
It is important to note at the outset that at common law no action existed in favor of a child for injuries sustained by his parent. (2 Cooley, Torts [4th ed.], § 174, p. 41; Pleasant v. Washington Sand & Gravel Co., 262 F. 2d 471, 472-473; Halberg v. Young, 41 Hawaii 634; Sol Schreiber, Damages in Personal Injury and Wrongful Death Cases, p. 366.) The consequence of this void is that it raises preliminary questions of constitutional limitations on this court as a result of certain provisions contained in our State Constitution referable to changing the common law.
Section 14 of article I of the New York State Constitution provides that the common law in effect on April 19, 1775 shall be and continue the law of the State of New York “ subject to such alterations as the legislature shall make concerning the same ”. (Italics added.) This provision was included in the first Constitution of this State and has been continued through every constitutional revision since. (See historical review in Waters & Co. v. Gerard, 189 N. Y. 302, 308.)
Despite the clear and unequivocal language that alteration of the common law in New York is the province of the Legislature and despite the clear and obvious relevance of that provision to those cases which seek change in the law by judicial action, section 14 of article I of the New York State Constitution remains generally unmentioned in the jurisprudence of this State. The research which this court has made discloses only one instance in which the constitutional provision was cited on the issue of judicial prohibition to alter the common law. This was in the concurring opinion of Justice Woodward in Gibson v. Casein Mfg. Co. (157 App. Div. 46, 48). There, after quoting the constitutional provision (formerly art. I, § 16) the Justice stated (p. 49): “ and this, I take it, precludes the right of the courts to alter the common law ”. Strange it is that no appellate court in this State has since seen fit to either affirm the view of Justice Woodward or to distinguish his construction of the constitutional limitation, or in fact to even note the existence of the constitutional provision.
Nor does this avoidance appear to be merely a matter of judicial oversight. In Millington v. Southeastern Elevator Co. (22 N Y 2d 498), decided as recently as 1968, it was specifically urged that section 14 of article I of the New York State Constitution precluded the courts and authorized only the Legislature to alter the common law to the end that a wife might recover for *1080 loss of consortium.-. To this the- Court of Appeals said (p. 508): “ Finally, we turn to the argument that change should come from the Legislature. No recitation of authority is needed to indicate that this court has not been backward in overturning unsound precedent in the area of tort Law ”. (Italics added.) There followed a quotation from Woods v. Lancet (303 N. Y. 349, 355): “We act in the finest common-law tradition when we adapt and alter decisional law to produce common-sense justice * * # Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule.” The argument that the court could not constitutionally change the law was treated by the court as an argument that it should not change the law. Section 14 of article I of the New York State Constitution was not mentioned.
The absence of reference to the- constitutional restriction is not confined to those decisions which determine to alter or add to the common law. In Drobner v. Peters (232 N. Y. 220, later overruled 303 N. Y. 349), the court, in an opinion by Judge Pound, concluded (p. 224) that an infant plaintiff did not have a cause of action at common law for prenatal injuries. However, the refusal to permit the establishment of such cause of action was not premised on a constitutional limitation, but rather on the conclusion that the reasons in favor of recovery at the time of that decision did not ¡sufficiently outweigh those against it “ as to call for judicial legislation on the question ”. (P. 224.)
A fair reading of the decisional law of this State compels the • conclusion that there is a reluctance if not a studied avoidance by our courts to rule that only the Legislature and not the judiciary may constitutionally alter the common law. It is a fact that on occasion our courts have judicially altered principles grounded in the common law.
Philosophically, the decisions directing change appear to be supported by a juridical concept that the common law of this State is to be viewed as a living’ embryo and not as a mummified cadaver. In Gallagher v. St. Raymond’s R. C. Church (21 N Y 2d 554, 558), it was stated: “ The common law of this State is not an anachronism, but is a living law which responds to the surging reality of changed conditions ’ ’. In Bing v. Thunig (2 N Y 2d 656, 667),. the Court of Appeals stated: “ To the suggestion that stare decisis compels us to perpetuate it until the legislature acts, a ready answer is at hand. It was intended, not to effect a 1 petrifying rigidity,’ but to assure the justice that flows from certainty and stability. If, instead, adherence *1081 to precedent offers not justice "but unfairness, not certainty "but doubt and confusion, it loses its right to survive, and no principle constrains us to follow it.”
A comparison of judicial decisions directing change in the law with those refusing to do .so is informative. A pattern is discernible.
Where change is the determination, typically the spectre of other past fixed rules is raised. The illogic of their inflexible application over the course of changing times is cited. The injustices that flowed from their continuance are recounted. Their change by prior judicial .action is cited as enlightened and enabling precedent for the new rule the court is about to announce. A hallmark of these decisions announcing “ It’s time for a change ” is their preoccupation with, and rhetorical references to the deficiencies in the law in the Middle Ages. For example, cited as buttressing support for a new rule are the following: ‘1 When these ghosts of the past stand in the path of justice clanking their mediaeval chains the proper course for the judge is to pass through them undeterred ”. From United Australia v. Barclay Bank ([1941] A. C. 1, 29) and “ if that [the absence of a prior decision] were a valid objection, the common law would now be what it was in the Plantagenet period”. Both cited with approval in Woods v. Lancet (303 N. Y. 349, 355, supra) overruling Drobner v. Peters (232 N. Y. 220, supra) and establishing the right of suit for prenatal injuries. Decisions altering existing law are typically lengthy.
In contrast, when preservation of the status quo is the determination of the courts, the opinions are generally more brief. The absence of any definitive common-law determination in favor of the new rule is noted. Prior judicial determinations contrary to the proposed change are duly cited. Application of the principle of stare decisis is urged. There is typically added the argument that it is the binding force of precedent that has lent stability and uniformity to our law. See, for example, Kronenbitter v. Washburn Wire Co. (4 N Y 2d 524) which held that a wife couldn’t recover for loss of consortium. (Decision overruled 10 years later in Millington v. Southeastern Elevator Co., 22 N Y 2d 498, supra.)
Precisely when change of the common law is a proper exercise of the judiciary is not clear. Whether the exercise is to be confined to adaptation and alteration of ‘ ‘ decisional law ’ ’ or “ court-made rule ” or to fields of law “ peculiarly nonstatutory”, see Woods v. Lancet (303 N. Y. 349, 355, supra) and Bing v. Thunig (2 N Y 2d 656, 667, supra); or to those instances *1082 in which a court concludes that change is necessary to bring the law into ‘ ‘ accordance with present day standards of wisdom and justice”, Funk v. United States (290 U. S. 371, 382); or “to produce common-sense justice ”, Woods v. Lancet (303 N. Y. 349, 355, supra); or when adherence to precedent offers “ not justice but unfairness, not certainty but doubt and confusion ”, Bing v. Thunig (2 N Y 2d 656, 667, supra); or to a broader spectrum when a court simply concludes that ‘ ‘ reasons in favor” of change “ so far outweigh” those against that judicial legislation is called for, Drobner v. Peters (232 N. Y. 220, supra), is not at all clear. The limitations appear varied and unfixed. The court concludes that the instances when the judiciary can properly seek to alter the common law of this State remains uncertain.
When the judiciary should properly .seek to alter the common law of this State is a different matter. For ill defined as the areas for permissible judicial legislation may be, the limitations on discretionary judicial intrusion in the lawmaking process are more certain. It is clear that our courts should avoid effecting change in the common law of this State when there is no substantial body of agreement that such change is necessary and when it is patent that such change can be better effected by legislative action. Measured against these standards, plaintiff’s position before the court is deficient on both scores.
While the asserted cause of action by minor children for negligent injury to their parent appears to be novel in this State, the matter has been considered by the Federal courts and by the trial courts in other States. The decisions in those jurisdictions are unanimous in their holding that such a cause of action does not lie. (Turner v. Atlantic Coast Line R. R. Co., 159 F. Supp. 590, reviewing earlier case decisions; Hill v. Sibley Mem. Hosp., 108 F. Supp. 739; Pleasant v. Washington Sand & Gravel Co., 262 F. 2d 471; Halberg v. Young, 41 Hawaii 634, supra; Jeune v. Del E. Webb Constr. Co., 77 Ariz. 226; Eschenbach v. Benjamin, 195 Minn. 378; Stout v. Kansas City Term. R. Y. Co., 172 Mo. App. 113; Gibson v. Johnston, 75 Ohio L. Abs. 413, app. dsmd. 166 Ohio St. 288 and the most recent decision, Hoffman v. Dautel, 189 Kan. 165.)
In addition, annotation in 59 ALR 2d 454-456 cites decisions in the State courts of Massachusetts, Michigan and Minnesota containing dictum to the same effect. The one decision which initially upheld a child’s right of action for negligent injury to parent was Scruggs v. Meredith (134 F. Supp. 868, revd. 244 F. 2d 604).
*1083 The one law .review article which the court has found that deals with the problem in depth cautions against the adoption of the suggested cause of action. (See 54 Mich. L. Rev. 1023.) In brief, this court has found no substantial agreement evidenced either by decision, text, or law review, that change is yet necessary.
As to the propriety of judicial intrusion in this area, a host of problems has been noted. In Pleasant v. Washington Sand & Gravel Co. (262 F. 2d 471, 473, supra) the court noted the need to consider the matters of <£ double recovery” and ££ increased litigation ”. In Halberg v. Young (41 Hawaii 634, 646, supra) the court observed, £ ‘ while not technically .so, to allow such action would in substance be splitting the cause of action. Further, as trial lawyers well know, juries as a matter of fact do consider the plight of young children in fixing damages where their mother is so .seriously injured as to be unable to give them proper care and attention ’ ’.
The author in Michigan Law Review (vol. 54, p. 1023) listed nine considerations weighing against the formulation of a child’s right of action for loss of .support and services of a parent. They were: (1) the absence of any enforceable claim on the child’s part to the parent’s services, (2) the absence of precedents, (3) the uncertainty and remoteness of the damages involved, (4) the possible overlap with the parent’s recovery, (5) the multiplication of litigation, (6) the possibility of settlements made with parents being upset, (7) the danger of fabricated actions, (8) the increase of insurance costs, and (9) the public policy expressed in some jurisdictions in the enactment of “ heart balm ” statutes.
To the cited considerations this court adds its own: Should the proposed cause of action accrue to infant children collectively as the plaintiff has pleaded it in the case for decision, or should each child have the individual right to pursue a claim for damages? If the answer is that there is to be a cause of action for a class, how are damages to be apportioned among members of the class? Of what are the damages to consist? To a child who has lost the services of a parent the possibilities of injuries range from malnutrition to a warped psyche.
The principal objection of this court to the plaintiff’s proposal, however, is the complete inadequacy of our judicial system to solve such a complex issue. Untested complaints and appeals are dull and clumsy tools to fashion a new legal form. Yet every facet of that form must ultimately be shaped by an appellate court decision. Decades can pass before the *1084 new principle of law is finally formed. The matter requires study in depth and resolution by a comprehensive statutory enactment.
In reaching the conclusion that the children’s causes of action do not lie, this court has not concluded that the plaintiff’s proposal is without merit. It is generally true that the rights of children have not kept pace with those of other members of the family. It has been said that: ‘ ‘ the interest of the child in an undisturbed family is at least of equal importance with that of either parent, and is entitled to equal consideration and redress ”, (Prosser, Torts [2d ed.], p. 697.) As Judge Youngdahl observed when a child loses the services and affection of a parent, “it is deprived of something that is indeed valuable and precious”. (Hill v. Sibley Mem. Hosp., 108 F. Supp. 739, 741, supra.) While not urged by the plaintiff, it seems to this court that it could be well argued that the relief requested would be only a logical extension of a child’s right to participate in the proceeds arising from the wrongful death of a parent, now provided under EPTL 5-4.1 and EPTL 5-4.4. Specific note is made, however, that this right to infants came into our law by legislative enactment.
With such merit as the plaintiff’s proposal has, this court, nevertheless, is of the opinion that the admonition is well taken that before a court “ glibly catches hold of the maxim ‘ ubi jus, ibi remedium ’, it should also carefully consider the above-mentioned arguments which militate against allowing recovery ”, (54 Mich. L. Rev. 1023, 1025.)
Having considered the arguments, this court has concluded that the plaintiff’s proposal to establish a child’s right of action for loss of services and affection of a parent is an idea whose time has not yet arrived; and further, that when it arrives, its birth will be better attended by the Legislature than the judiciary as its legal obstetrician.
Defendants’ motion is granted.