338 So.2d 1117 (1976)
Raymond CLARK et al., Plaintiffs,
v.
SUNCOAST HOSPITAL, INC., et al., Defendants.
No. 76-1222.
District Court of Appeal of Florida, Second District.
October 27, 1976.
Rehearing Denied November 24, 1976.
John A. Lloyd, Jr., of Lloyd & Henniger, St. Petersburg, and Karl B. Grube, Seminole, for plaintiffs.
Charles S. Carrere, of Harrison, Greene, Mann, Rowe & Stanton, St. Petersburg, for defendants, Evans and Harvey.
SCHEB, Judge.
The Circuit Court of the Sixth Judicial Circuit in and for Pinellas County has certified *1118 to this court the following question under Fla.App. Rule 4.6(a):
DOES A DEPENDENT CHILD UNDER THE AGE OF EIGHTEEN YEARS HAVE A "DERIVATIVE" CLAIM ARISING FROM AN INJURY TO A PARENT UPON WHOM THE MINOR DEPENDS FOR SUPPORT, INSTRUCTION OR COMPANIONSHIP, IN CIRCUMSTANCES IN WHICH THE PARENT IS INJURED BUT DOES NOT DIE AS A RESULT OF THE INCIDENT IN LITIGATION?
Plaintiff Raymond Clark, in Count I of his suit against the defendants, seeks damages on allegations that defendants' negligence resulted in his suffering cardiac arrest during surgery on April 23, 1973, thereby causing brain damage, paralysis and personality changes which have rendered the plaintiff disabled and unable to care for his children. In Count II, Clark's wife seeks damages for loss of support, care, companionship, and consortium of her husband. In Count III, the Clark children, as plaintiffs, seek damages against the defendants, alleging:
"15. Donathon Clark, Sherry Clark and Shane Clark state that they are the minor children of Raymond Clark and Linda Clark, the plaintiffs herein, and that as a result of the negligence of defendants as set forth by Raymond Clark in Count I and on account of the injury to Raymond Clark's brain, and personality changes and disabilities imposed by his said injuries, they have been deprived of the support and the instruction and the companionship of Raymond Clark who has been unable, as a result of his said injury, to function as a father and as a provider for his said children."
Defendants moved to dismiss Count III; however, the trial judge reserved ruling and certified the above question to this court. Counsel for the parties agree that an answer to the question certified would be determinative of the entire cause inasmuch as all claims of the Clark children as plaintiffs are alleged in Count III. We agree that our answer will be dispositive of their case. See Fla.App. Rule 4.6(a). Cf., Dees v. State, 295 So.2d 296 (Fla. 1974); Gordon v. Norris, 90 So.2d 914 (Fla. 1956).
Admittedly, the question is without controlling precedent in this state. Plaintiffs make a forceful argument that as children of a disabled father, they will not only suffer a loss of the funds that their father ordinarily would have provided for their food, shelter and health; but likewise, the loss of love, moral training, example and guidance they would otherwise receive. And while plaintiffs concede that their father is the appropriate claimant to recover for loss of income which would be used to pay for their basic requirements of life, they argue that to deny them the right to recover their own intangible losses is a manifest injustice. The cause of action now claimed by the plaintiffs was unknown at common law and has not been provided by statute. But, plaintiffs cite Gates v. Foley, 247 So.2d 40 (Fla. 1971), where the court recognized a wife's entitlement unknown at common law, to recover for loss of consortium derivative of her husband's claim for damages for his own injuries. Moreover, plaintiffs point to statutory enactments in favor of children for damages occurring during the lifetime of an injured parent where that parent ultimately dies as a result of the injuries, Sections 768.16-768.27, Florida Statutes. Plaintiffs view their own claims here as equally meritorious.
We, in effect, are asked to judicially declare that there are derivative claims in favor of children as a result of injuries to their parents. Sensitive as we are to the claims of the Clark children and all others who may be deprived of those intangible moral benefits which only parents can provide, we decline the invitation for a judicial intrusion into this area.
Numerous considerations weigh against formulation of children's right of action. Nine of these reasons are cited in a note in 54 Michigan Law Review 1023 (1956):
(1) The absence of any enforceable claim on the child's part to the parent's services, *1119 (2) the absence of precedent, (3) the uncertainty and remoteness of the damages involved, (4) the possible overlap with the parent's recovery, (5) the multiplication of litigation, (6) the possibility of settlements made with parents being upset, (7) the danger of fabricated actions, (8) the increase of insurance costs, and (9) the public policy expressed in some jurisdictions in the enactment of "heart balm" statutes.
In Duhan v. Milanowski, 75 Misc.2d 1078, 348 N.Y.S.2d 696 (Sup.Ct. 1973), the court quoted the reasons cited in that article and added its own when it posited the question of whether the cause of action accrues to the children collectively or individually, and, if collectively, the problem of apportionment among them. Asking the rhetorical question, of what are these damages to consist, the court in Duhan observed that to a child who has lost the services of a parent, the possibilities of claim for damages may range from malnutrition to a warped psyche.
The asserted cause of action is novel in this state; however, as pointed out in the Annotation at 59 A.L.R.2d 454 (1958), the decisions in other states and federal jurisdictions with virtual unanimity hold that such a cause of action does not lie. The one decision which initially upheld a child's right of action for negligent injury to his parent was Scruggs v. Meredith, 134 F. Supp. 868 (D.Hawaii 1955). It was reversed on appeal. See 244 F.2d 604 (9th Cir.1975).
If the claims asserted by plaintiffs were properly circumscribed, there could be merit to their position from a policy standpoint. But, if these contentions are to be considered, they should be addressed by the legislative branch after a comprehensive study.
Accordingly, we answer the question posed in the negative.
GRIMES, A.C.J., and GOBBIE, EVELYN, Associate Judge, concur.