BARBARA DEANGELIS, Individually and as Natural Guardian of DEIRDRE DEANGELIS and Others, Respondent, v LUTHERAN MEDICAL CENTER et al., Appellants, et al, Defendant.

M. PHILIP AMODEO, as Administrator of the Estate of YVES LEHENAFF, Deceased, et al., Appellants, v THOMAS N. PRECIOUS et al., Respondents.

Second Department, December 21, 1981

APPEARANCES OF COUNSEL

*Frank E. Maher* for Lutheran Medical Center, appellant and *Barry, McTiernan & Moore* for Victory Memorial Hospital, appellant (one brief filed).

*Moran, Spiegel, Palmer, Pergament & Brown (Donald D. Brown, Jr.,* and *Keith V. LaRose* of counsel), for M. Philip Amodeo and another, appellants.

*Stutman & Rothberg (Steven W. Stutman* of counsel), for Barbara DeAngelis, respondent.

*J. George Spitz (James M. Fedorchak* of counsel), for Thomas N. Precious, respondent.

*Gross, Gross & Gross (S. Richard Gross* of counsel), for American Honda and another, respondents.

### OPINION OF THE COURT

GIBBONS, J.

The issue on these appeals is whether a child has a cause of action for the loss of parental consortium for injuries negligently inflicted on the parent by third parties. After a review of the considerable arguments that have been generated on both sides of the question, we conclude that no such cause of action should be recognized. We perceive several practical and policy considerations that support this conclusion, notwithstanding the real harm suffered by a child upon the loss of parental care, guidance and training.

In the first case, *DeAngelis v Lutheran Med. Center,* Barbara DeAngelis was admitted to the Lutheran Medical Center for a tubal ligation for the purpose of sterilization. The operation was performed by Dr. K. Y. Jamal. Some 11 months later, Mrs. DeAngelis was admitted to defendant Victory Memorial Hospital, allegedly for treatment of abdominal pains arising out of the prior operation. Subsequently, she commenced suit against the Lutheran Medical Center, Dr. Jamal and Victory Memorial Hospital, alleging medical malpractice, *inter alia,* in the diagnosis and treatment of her condition. The complaint also contained causes of action numbered fifth, sixth, seventh and eighth, which were brought on behalf of Mrs. DeAngelis' three minor children, Dierdre, Denise and Joseph, which seek damages for the children's loss of the "aid, comfort, and services" of their mother. Thereafter, defendant Lutheran Medical Center moved, and the other codefendants cross-moved, for a dismissal of the afore-mentioned causes of action asserted on behalf of the children. Special

Term denied the motion and cross motions, but without prejudice to renew at the time of trial.

In the companion case, *Amodeo v Precious,* Francoise LeHenaff, while driving an automobile owned by her husband, Herve LeHenaff, was injured in a collision with an automobile owned and driven by Thomas Precious.[1] The complaint alleges the negligence of Mr. Precious in the operation of his vehicle and also joins as defendants, McCallum Chevrolet, American Honda Motor Company and Honda Motor Company, which are the dealer, distributor and manufacturer, respectively, of the car driven by Mrs. LeHenaff. Causes of action for negligence in the design and manufacture of the vehicle, breach of warranty and products liability were brought against the latter three defendants. In addition, three causes of action were brought on behalf of Mrs. LeHenaff's two minor children, Sophie and Laurent, seeking damages for the lost "society, services and companionship" of their mother. Subsequently, Special Term granted the defendants' motions to dismiss the ninth, twelfth and fifteenth causes of action, which are the causes brought on behalf of the minor children. Since we agree with Special Term's decision in *Amodeo v Precious,* we affirm the order in that case. However, the contrary order in *DeAngelis v Lutheran Med. Center* must be reversed, and the fifth, sixth, seventh and eighth causes of action must be dismissed as to the appellants.

At common law, all of the rights of the family group were vested in the father, and any injuries inflicted on the members of the family were actionable only by the father. The earliest cases which recognized the husband's claim for consortium, analogized the husband's loss of his wife's "company" to the master's loss of the services of a servant (see, e.g., *Guy v Livesey,* 2 Cro Jac 501, 79 Eng Rep 428 [1618]; *Hyde v Scyssor,* 2 Cro Jac 538, 79 Eng Rep 462 [1619]). Yet, at common law, neither a wife nor child could recover if deprived of a husband's or parent's society or services (see Prosser, Torts [4th ed], §§ 124, 125, pp 886,

---

1. Plaintiff, M. Philip Amodeo, is the administrator of the goods, chattels and credits of Yves LeHenaff, the nine-year-old son of Herve and Francoise LeHenaff, who perished in the accident.

894; 2 Cooley, Torts [4th ed], § 174, p 41). Although initially based on the lost services of his injured spouse, the husband's consortium claim eventually expanded to include recovery for the loss of the other aspects of their relationship, i.e., the deprivation of affection, aid, comfort, society, companionship and sexual relations (see Prosser, Torts [4th ed], § 125, p 888; 1 Harper and James, Law of Torts, § 8.9, pp 635-636; Judicial Treatment of Negligent Invasion of Consortium, 61 Col L Rev, 1341, 1343; Dwork, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 Boston U L Rev 722).

Recently, however, the vast majority of jurisdictions have allowed the wife to recover damages for the lost consortium of her husband who had been negligently injured (see *American Export Lines v Alvez,* 446 US 274, 284-285). In New York, the recognition of the wife's claim came as recently as 1968, in the case of *Millington v Southeastern Elevator Co.* (22 NY2d 498). The Court of Appeals, relying, in part, on the passage of the Married Women's Emancipation Acts, stated (p 509) that it was correcting "an unjust discrimination under New York law". The concept of spousal consortium was held to include (p 502) "not only loss of support or services * * * [but] also embraces such elements as love, companionship, affection, society, sexual relations, solace and more".

In the instant cases, plaintiffs seek to extend the law of consortium to recognize a child's claim for the loss of the companionship, love, emotional support and services, etc., of a parent arising out of the physical injuries negligently inflicted on the parent. We decline to do so based on countervailing policy considerations. "Decisions delineating the extent of tort liability are * * * pronouncements of social policy which should reflect the often subtle balance of the interests involved" (see *Berger v Weber,* 411 Mich 1, __, 303 NW2d 424, 430, dissenting opn by LEVIN, J.). While the real and significant harm suffered by children of parents who are physically injured cannot be denied (see *Hoffman v Dautel,* 189 Kan 165; *Ferriter v O'Connell's Sons,* __ Mass __, 413 NE2d 690; Cooney and Conway, The Child's Right to Parental Consortium, 14 John Marshall L

Rev 341), not every loss can be made compensable, and the courts must draw the line where liability terminates (see *Koskela v Martin,* 91 Ill App 3d 568, 570). "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (See *Tobin v Grossman,* 24 NY2d 609, 619.)

As an exercise in delineating liability, the instant cases are somewhat analogous to the Court of Appeals rejection of a right to recover for the mental and emotional injuries experienced by a "bystander" as a consequence of direct injuries to another (see *Tobin v Grossman, supra; Howard v Lecher,* 42 NY2d 109; *Vaccaro v Squibb Corp.,* 52 NY2d 809; *Lafferty v Manhasset Med. Center Hosp.,* 79 AD2d 996, affd 54 NY2d 277). As stated by Judge WACHTLER in *Howard v Lecher (supra,* p 113), "[t]here can be no doubt that the plaintiffs have suffered and the temptation is great to offer them some form of relief. Ideally, there should be a remedy for every wrong. This is not the function of the law, however". In that case the Court of Appeals denied recovery in a malpractice action for mental and emotional injuries suffered by the parents of a child who was born with, and eventually succumbed to, Tay-Sachs disease.

Of the courts that have decided the question presented in the instant appeals, the vast majority have declined to authorize an action for loss of parental consortium.[2] At the extreme, the right to damages for loss of consortium could

---

2. *Early v United States,* 474 F2d 756 (Alaskan law); *Jeune v Webb Constr. Co.,* 77 Ariz 226 (1954); *Borer v American Airlines,* 19 Cal 3d 441 (1977); *Hinde v Butler,* 35 Conn S 292 (1979); *Pleasant v Washington Sand & Gravel Co.,* 262 F2d 471 (1958, DC Cir); *Clark v Suncoast Hosp.,* 338 So 2d 1117 (1976, Fla); *Halberg v Young,* 41 Hawaii 634, 59 ALR2d 445 (1957); *Koskela v Martin,* 91 Ill App 3d 568 (1980); *Hankins v Derby,* 211 NW2d 581 (1973, Iowa); *Hoffman v Dautel,* 189 Kan 165 (1962); *McFarland v Cathy,* 349 So 2d 486 (1977, La); *Hickman v Parish of East Baton Rouge,* 314 So 2d 486 (1975, La); *Sawyer v Bailey,* 413 AD2d 165 (1980, Me, dicta); *Miller v Monsen,* 228 Minn 400 (1949); *Bradford v Union Elec. Co.,* 598 SW2d 149 (1979, Mo); *Hoesing v Sears, Roebuck & Co.,* 484 F Supp 478 (1980, Neb); *General Elec. Co. v Bush,* 88 Nev 360 (1972); *Russell v Salem Transp. Co.,* 61 NJ 502 (1972); *Morgel v Winger,* 290 NW2d 266 (1980, ND); *Gibson v Johnston,* 75 Ohio Abs 413, 144 NE2d 310 (1956); *Turner v Atlantic Coast Line R. R. Co.,* 159 F Supp 590 (1958, N Dist Ga, applying law of SC); *Erhardt v Havens, Inc.,* 53 Wn 2d 103 (1958). To the contrary are *Ferriter v O'Connell's Sons* (__ Mass __, 413 NE2d 690 [1980]) and *Berger v Weber* (411 Mich 1 [1981]). The question has been addressed in New York, as far as the reported cases are concerned, only in *Duhan v Milanowski* (75 Misc 2d 1078) where the child's claim was dismissed.

conceivably be extended to brothers, sisters, cousins, in-laws, friends and others who would be deprived of a person's companionship (see *Borer v American Airlines,* 19 Cal 3d 441, 446). Although it is clear that there must be limits to a defendant's liability, it is not as easy to define precisely where the limits should be placed. "Requiring a defendant who has tortiously injured one person to pay for resulting losses experienced by every other person would place an entirely unreasonable burden on all human activity" (see *Koskela v Martin,* 91 Ill App 3d 568, 572, *supra;* Prosser, Torts [4th ed], § 54). We believe that claims for loss of consortium, itself an historical curiosity, should be limited to the spousal relationship. "In defining the common law, it is this court's duty to consider the consequences of recognizing a novel cause of action and to strike the delicate balance between the competing policy considerations which arise whenever tort liability is sought to be extended beyond traditional bounds." *(Albala v City of New York,* 54 NY2d 269, 274-275.)

Additionally, the concept of duty serves to limit the scope of a defendant's liability for negligence. "[A] successful plaintiff must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party" *(Becker v Schwartz,* 46 NY2d 401, 410). A duty arises when the relationship between individuals, the asserted plaintiff and defendant, is such as to impose upon the latter a legal obligation for the benefit of the former (see Prosser, Torts [4th ed], § 53, p 324). While the harm suffered by the children of a parent who has been physically injured is foreseeable, foreseeability alone does not give rise to a duty (see *Tobin v Grossman,* 24 NY2d 609, 615, *supra; Pulka v Edelman,* 40 NY2d 781, 785). "While a court might impose a legal duty where none existed before (see, generally, 1A Warren's Negligence, § 3.13, subd [2], pp 166-167), such an imposition must be exercised with extreme care" *(Pulka v Edelman, supra,* p 786). In the absence of duty, there is no breach and therefore no liability (see *Kimbar v Estis,* 1 NY2d 399, 405). As in the case of emotional injuries suffered by a bystander as a consequence of direct physical injury inflicted on another, we find that a tort-feasor has

no duty to the child of the injured party (see *Berger v Weber,* 411 Mich 1, __, 303 NW2d 424, 432-433, *supra).* "It is enough that the law establishes liability in favor of those directly * * * harmed" *(Tobin v Grossman, supra,* p 619). Again, the liabilities arising from negligence must have a reasonable limitation.

Moreover, the infant is provided with an alternative legal remedy of sorts. "[R]eflection of the consequential disadvantages to children of injured parents is frequently found in jury awards to the parents on their own claims under existing law and practice" *(Russell v Salem Transp. Co.,* 61 NJ 502, 507, *supra;* see, also, *Koskela v Martin,* 91 Ill App 3d 568, 571, 572, *supra).* This overlap or duplication is a real consequence of recognizing the child's claim, and thus, "courts should be wary of creating additional claims deriving from the same tortious act, particularly where all injuries are localized within the same family unit" *(Berger v Weber, supra,* p __, p 435, dissenting opn by LEVIN, J.). Should this type of claim be recognized, the jury would have great difficulty in distinguishing between the losses of the parent from that of the child (see *Duhan v Milanowski,* 75 Misc 2d 1078, 1083). And, as stated by the California Supreme Court: "to ask the jury, even under carefully drafted instructions, to distinguish the loss to the mother from her inability to care for her children from the loss to the children from the mother's inability to care for them may be asking too much" (see *Borer v American Airlines,* 19 Cal 3d 441, 448, *supra).* Thus, we believe that the parent's recovery will enable the parent to provide, if necessary, outside care and services for the child. Beyond the services of parent substitutes or mental health professionals, monetary compensation "will not enable plaintiffs to regain the companionship and guidance of a mother; it will simply establish a fund so that upon reaching adulthood, when plaintiffs will be less in need of maternal guidance, they will be unusually wealthy men and women" *(Borer v American Airlines, supra,* p 447). In addition, if the child's independent cause of action were recognized, the child's recovery would presumably be segregated, and would be unavailable "for control and disposition by the

parents as managers of the family finances" (see *Russell v Salem Transp. Co., supra,* p 507).

Additional policy considerations also support our conclusion.

The inclusion of several secondary claims might hinder or complicate settlements. Furthermore, "the social burden of providing damages for this loss will ultimately be borne by the public through increased insurance premiums or in the enhanced danger that accrues from the greater number of people who will choose to go without any insurance" *(Koskela v Martin,* 91 Ill App 3d 568, 572, *supra).* Since virtually every injury to a parent with minor children would be accompanied by a claim for loss of parental consortium, the expenses of settling or litigating these claims would be sizable (see *Borer v American Airlines,* 19 Cal 3d 441, 447, *supra).* "[T]he right here debated would entail adding as many companion claims as the injured parent had minor children * * * The defendant's burden would be further enlarged if the claims were founded upon injuries to both parents" (see *Russell v Salem Transp. Co.,* 61 NJ 502, 506, *supra; Borer v American Airlines, supra,* p 449). We should take into account the burden of payment of awards for loss of parental consortium, not only on the particular defendant, but also on the insured community as well (see *Russell v Salem Transp. Co., supra,* p 506).

We are aware that courts should not shirk their duty to overturn unsound precedent and should strive to continually develop the common law in accordance with our changing society (see *Millington v Southeastern Elevator Co.,* 22 NY2d 498, 509, *supra; Bing v Thunig,* 2 NY2d 656; *Woods v Lancet,* 303 NY 349). Accordingly, we do not rely on the rationale of those cases which have relegated this matter to the Legislature (see, e.g., *Clark v Suncoast Hosp.,* 338 So 2d 1117 [Fla]; *Hankins v Derby,* 211 NW2d 581 [Iowa]; *Bradford v Union Elec. Co.,* 598 SW2d 149 [Mo]). Yet, the mere potential ability to change the common law is not the same as the desirability of making a particular change (see *Duhan v Milanowski,* 75 Misc 2d 1078, 1082, *supra).* As we have concluded that policy considerations do not warrant the modification of the common law in the

instant matters, it is without significance whether we claim to follow judicial activism or judicial restraint.

Plaintiffs contend that since New York has given a wife the right to recover for the loss of the consortium of her husband, there is no basis to deny a cause of action for the child's loss of parental consortium. However, there are significant differences between the marital relationship and the parent-child relationship that support the limitation of a cause of action for loss of consortium to the marital relationship. The spousal action rests in large part on "the deprivation of sexual relations and the attendant loss of child-bearing opportunity" (see *Millington v Southeastern Elevator Co.,* 22 NY2d 498, 507, *supra),* which does not exist as an element of damage in the child's action for loss of consortium (see *Borer v American Airlines,* 19 Cal 3d 441, 448, *supra; Koskela v Martin,* 91 Ill App 3d 568, 572, *supra).* To be sure, there are some common elements of the spousal and parental consortium claims, i.e., the loss of love, affection and companionship. Yet, we perceive as significant those elements which are present in the spouse's claim but are missing in the child's claim. As enunciated previously, the social burden of the potential parental consortium claims would be considerably greater than only one spousal claim (see *Borer v American Airlines, supra,* p 449). In addition, the segregation of the child's independent recovery away from the control of the parent, which would presumably not be available until the child's attainment of majority, presents problems not found in the spousal contest. Furthermore, the degree of reliance upon the guidance of the parents may differ widely between children, considering their developing maturity. "Close society and companionship between spouses typically endures for the length of the marital relationship, ideally, for a lifetime, while the interaction of parent and child often, though not always, attenuates as the child matures" (see *Berger v Weber,* 411 Mich 1, __, 303 NW2d 424, 441, *supra,* dissenting opn of LEVIN, J.). Also, the difficulty of calculating the child's damages presents unique problems in the case of a child's claim for loss of parental care, guidance and training. Should the damages be awarded individually or collectively, and, if collectively,

how should they be apportioned among the children? (See *Duhan v Milanowski,* 75 Misc 2d 1078, 1083, *supra.)* And what significance should be attached to the ability of other family members: the noninjured parent, grandparents, siblings and other relatives or surrogate parents, to care for the child? (See *Berger v Weber,* 411 Mich 1, ___, 303 NW2d 424, 437, *supra.)* Yet, another problem would be whether to limit the damages suffered to the child's minority, or whether recovery should include the loss of consortium throughout the child's life.

To a certain extent the wife's claim was recognized to afford the wife similar rights as were historically afforded to the husband (see *Millington v Southeastern Elevator Co.,* 22 NY2d 498, *supra).* Yet, in New York, the law will not compensate a parent for the loss of a child's affection and companionship when a child is injured; recovery is limited to the parents' loss of services and the medical expenses incurred by the parent (see *Gilbert v Stanton Brewery,* 295 NY 270; *White v City of New York,* 37 AD2d 603; see, also, 67A CJS, Parent and Child, § 137). Essentially, the parent's recovery is limited to a tangible, pecuniary loss; it has not been extended to the intangible, so-called sentimental losses of affection, love and companionship. Thus, while there is a reciprocally equal status of spouses in the marriage relation, with the right of each to recover for the loss of consortium of the other, there is no such reciprocity of recognition of a parent's and child's claim. In sum, the reasoning supporting the recognition of the wife's claim, to end an unjust discrimination in the law, is not applicable to the child's claim for loss of parental consortium.

Plaintiffs, relying on the law in other jurisdictions, also claim that since the child may recover for the loss of the services of the parent in a wrongful death action, it would be appropriate to provide for the child when the parent suffers injury rather than death. This contention has been advanced by the courts in *Ferriter v O'Connell's Sons* (___ Mass ___, 413 NE2d 690, *supra)* and in *Berger v Weber* (411 Mich 1, ___, 303 NW2d 424, 426, *supra),* which have recognized a claim for parental consortium. As the Michigan Supreme Court stated (p ___, p 426): "[w]e are satisfied that the real anomaly is to allow a child's recovery for the

loss of a parent's society and companionship when the loss attends the parent's death but to deny such recovery when the loss attends the parent's injury". In both Michigan and Massachusetts, the wrongful death statutes include, within the measure of damages, the loss of the society and companionship of the decedent. However, the law in New York differs. The measure of damages in wrongful death actions in this State is limited to the "pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought"(see EPTL 5-4.3). The Court of Appeals has clearly stated that the phrase "pecuniary injuries" excludes recovery for loss of consortium (see *Liff v Schildkrout,* 49 NY2d 622; see, also, *Rowe v Patterson Home,* 72 AD2d 578). Thus, whatever the merit of this contention in those States where consortium is a recognized element of damages in a wrongful death action, the same cannot be asserted in this State. In any event, when the parent lives, " 'the tangible aspects of the child's loss can be compensated in the parent's *own* cause of action' " (see *Borer v American Airlines,* 19 Cal 3d 441, 452, *supra).* Thus, the real anomaly would be to provide for the child when the parent lives and not to provide for the child when the parent dies.

In conclusion, on the basis of public policy and the results which would arise upon recognition of this type of claim, such as the additional burden placed on society through increased costs of insurance and the added expense of litigation and settlement, and in the interest of limiting the legal consequences of a wrong to a controllable degree, we decline to recognize a new cause of action on behalf of a child for the loss of parental consortium. We do not pretend to doubt the harm experienced by a child upon the loss of parental care, companionship, guidance, love and training. Yet, inclusion of the child's claim within the parent's recovery provides an alternative, and, in our view, suitable legal remedy for the child. It is here that we draw the line which delineates the limits of liability, upon our conceptions of public policy, which are, no doubt, "a matter upon which reasonable men may disagree" (see *Becker v Schwartz,* 46 NY2d 401, 408, *supra).*

HOPKINS, J. P., RABIN and COHALAN, JJ., concur.

In the first above-entitled action, appeal from an order of the Supreme Court, Kings County, dated November 3, 1980, dismissed as academic, without costs or disbursements. Said order was superseded by the order dated March 18, 1981, which was made upon reargument.

Order dated March 18, 1981 reversed insofar as reviewed, without costs or disbursements, and upon reargument, the order dated November 3, 1980 is vacated insofar as it denied the appellants' motion and cross motion to dismiss plaintiffs' fifth, sixth, seventh and eighth causes of action as to them and said motion and cross motion are granted.

In the second above-entitled action, order of the Supreme Court, Dutchess County, dated April 21, 1980, affirmed, without costs or disbursements.