Bruce SALIN, et al., etc., Appellants,

v.

Steven D. KLOEMPKEN, Respondent,

Frank E. Harwich, et al., Respondents.

No. 81–1135.

Supreme Court of Minnesota.

Aug. 13, 1982.

Schwebel, Goetz, Sieben & Hanson and Diane C. Hanson, Minneapolis, for appellants.

Rider, Bennett, Egan & Arundel and Michael D. Tewksbury, Minneapolis, for Kloempken.

Lasley, Gaughan, Stich & Angell and John F. Angell, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and W. D. Flaskamp, Minneapolis, for Harwich, et al.

AMDAHL, Chief Justice.

This is an appeal from an order of the Hennepin County District Court, dated September 23, 1981, granting defendants' motion to dismiss for failure to state a claim upon which relief can be granted. The plaintiffs are Bruce Salin, Christopher Salin, and Tracy Marie Salin, minor children of Marvin W. Salin. The action was brought to recover damages for loss of parental consortium resulting from injuries sustained by Marvin Salin while riding as a passenger in a vehicle driven by defendant Steven Kloempken. On December 15, 1978, the Kloempken vehicle was involved in a collision with another vehicle owned by defendant Wheels, Inc., leased by defendant Worthington Service Corporation, and operated by defendant Frank E. Harwich while in the scope of his employment with Worthington Service Corporation. Plaintiffs allege the accident was caused solely by the negligence of defendants.

Marvin Salin was severely injured in the accident and is now quadriplegic. Bruce and Christopher Salin were 7 and 2 years old respectively at the time of the accident. Tracy Marie was born 12 weeks after the accident. In addition to the children's loss of parental consortium claims, Marvin and Mary Ann Salin have commenced actions against the same defendants. Marvin Salin claims damages for his personal injuries and Mary Ann Salin claims damages for loss of spousal consortium. Both actions are pending in Hennepin County District Court and have not yet gone to trial.

Defendants brought joint motions to dismiss the children's claims pursuant to Minn. R.Civ.P. 12.02(5). On September 23, 1981, the motions were granted on the ground that no cause of action is recognized in Minnesota for a child's loss of parental consortium arising out of injuries caused by the negligence of a third person. Plaintiffs appeal from the district court order. We affirm.

The only issue presented on appeal is whether we should recognize a cause of action on behalf of children for loss of parental consortium resulting from injuries negligently inflicted on the parent by third parties. After a review of the arguments that have been generated on both sides of the question, we conclude that no such cause of action should be recognized.

The decision whether to limit liability for loss of consortium by denying a cause of action in the parent-child context, or to permit that action but deny claims based upon more remote relationships, is a question of policy. There can be no doubt that the children's claims have both logical and sympathetic appeal. *Suter v. Leonard*, 45 Cal.App.3d 744, 120 Cal.Rptr. 110 (Cal.Dist. Ct.App.1975). Benefits of the greatest value flow to a child from parental love, society, care, and services. Because a child's character, disposition, and abilities have a corresponding impact on society, it is important to the child and to society that the benefits derived from the parent-child relationship be protected. However, our decision must take into account considerations in addition to logical symmetry and sympathetic appeal. "[N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere.

In delineating the extent of a tortfeasor's responsibility for damages * * * the courts must locate the line between liability and non-liability at some point, a decision which is essentially political." *Id.* at 746, 120 Cal. Rptr. at 111–12.

At common law, all the rights of the family group were vested in the father. Under the doctrine of *pater familias*, injuries inflicted on members of the family were actionable only by the father. The father's action for wrongful injury to his spouse or child was derived from the master's cause of action for injury to his servant, and recovery was thus originally limited to the pecuniary value of his wife's or child's services. *See* W. Prosser, *Handbook of the Law of Torts* § 125 (4th ed. 1971). The father's action later became one for loss of "consortium," of which services constituted merely one element. Loss of love, care, society, companionship, and, in the case of a spouse, sexual relations, became compensable. *Id.* Yet, at common law, neither a wife nor a child could recover if deprived of a husband's or parent's society or services. *Id.* § 124, at 886; § 125, at 894.

Recently, however, the vast majority of jurisdictions have allowed the wife to recover damages for the lost consortium of her husband who had been negligently injured. *See* Love, *Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship,* 51 Ind.L.J. 590, 596 n.20. In Minnesota, recognition of the wife's claim came in 1969 in *Thill v. Modern Erecting Co.,* 284 Minn. 508, 170 N.W.2d 865 (1969), where we rejected "the medieval concept that the husband had a proprietary right to his wife's services, * * * but that the wife, as the property of her husband, had no reciprocal right to his." *Id.* at 512, 170 N.W.2d at 868. Quoting Dean Prosser, we noted that "The loss of 'services' is an outworn fiction, and the wife's interest in the undisturbed relation with her consort is no less worthy of protection than that of the husband." *Id.* The concept of consortium was held to include the

reciprocal rights inherent in the marital relationship of husband and wife, including such undefined elements as comfort, companionship, and commitment to the needs of each other. Its "predominant element," however, * * * is "the loss of sexual relationship," presumably including frustration of man's primal drive of reproduction. *The predominance of this element tends both to exclude claims asserted by children for injury to a parent and to avoid excessive appeal to sentimentality.*

*Id.* at 510–11, 170 N.W.2d 867–68 (footnote omitted) (emphasis added).

In this case, plaintiffs seek to extend the law of consortium to recognize a child's claim for the loss of society and companionship of a parent arising out of the physical injuries negligently inflicted on the parent. We decline to do so based on our prior cases and on countervailing policy considerations.

In *Plain v. Plain,* 307 Minn. 399, 240 N.W.2d 330 (1976), we held that a child could not recover damages from his or her mother for loss of maternal services when she negligently injures herself. We stated that "[a] child's interest in parental services is not protected against negligent interference even on the part of third parties," *id.* at 402, 240 N.W.2d at 332 (footnote omitted), and quoted a tentative draft of § 707A of the Restatement (Second) of Torts, which section currently provides:

Action by Child for Harm Caused by Tort Against Parent

One who by reason of his tortious conduct is liable to a parent for illness or other bodily harm is not liable to a minor child for resulting loss of parental support and care.

Restatement (Second) of Torts § 707A (1977). Our holding in *Plain* was based in part on an earlier decision, *Eschenbach v. Benjamin,* 195 Minn. 378, 263 N.W. 154 (1935), in which we denied a cause of action on behalf of the plaintiff children against a third person who negligently caused permanent and disabling injuries to their father. In *Eschenbach,* this court expressed concern that to allow the child's cause of action

would spurn "litigation almost without end, all based upon a single tort and only one individual physically involved in the accident itself." *Id.* at 380, 263 N.W. at 155–56. We need not detail the burdens presently being placed on the court system of this state in its attempt to respond to increasing caseloads and backlogged court calendars, a situation with which litigants and others who interact regularly with our justice system are all too familiar. Suffice it to say, the situation is sufficiently compelling today to make the concern we expressed in *Eschenbach* as relevant now as it was then.

As an exercise in delineating liability, the instant case is somewhat analogous to our rejection of a right to recover for the emotional and mental distress with resultant physical symptoms experienced by a "bystander" as a consequence of direct injuries to another. *Stadler v. Cross*, 295 N.W.2d 552 (Minn.1980). In *Stadler*, we discussed the considerations that are relevant to limiting the circle of liability:

> A person's liability for the consequences of her or his actions cannot be unlimited. The limits imposed must be as workable, reasonable, logical, and just as possible. If the limits cannot be consistently and meaningfully applied by courts and juries, then the imposition of liability would become arbitrary and capricious. Consequently, the cause of just apportionment of the losses would suffer. As the California Supreme Court observed,

"Justice * * * exists only when it can be effectively administered." *Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 310, 29 Cal.Rptr. 33, 42, 379 P.2d 513, 522 (1963).

*Id.* at 554. Other factors we feel are proper considerations in defining the scope of liability include the fear of a proliferation of claims, the potential for fraudulent claims, the foreseeability of the injury, and unduly burdensome liability. *Id.* at 555 n.3.

Of the courts that have decided the question presented in this case, the overwhelming majority have declined to authorize an action for loss of parental consortium.[1] Three jurisdictions have recognized the cause of action.[2] We believe, however, that claims for loss of consortium, itself a historical curiosity, should be limited to the spousal relationship. There are significant differences between the marital relationship and the parent-child relationship that support the limitation of a cause of action for loss of consortium to the marital relationship. As we stated above, the spousal action rests in large part on the deprivation of sexual relations and the accompanying loss of childbearing opportunity, which does not exist as an element of damages in the child's action. *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 563 P.2d 858, 138 Cal. Rptr. 302 (1977); *Koskela v. Martin*, 91 Ill.App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980); *DeAngelis v. Lutheran Medical Center*, 84 A.D.2d 17, 445 N.Y.S.2d 188

---

1. *See Early v. United States*, 474 F.2d 756 (9th Cir. 1973); *Pleasant v. Washington Sand & Gravel Co.*, 262 F.2d 471 (D.C.Cir.1958); *Meredith v. Scruggs*, 244 F.2d 604 (9th Cir. 1957), *rev'g per curiam*, 134 F.Supp. 868 (D.Hawaii 1955); *Turner v. Atlantic C.L.R.R.*, 159 F.Supp. 590 (N.D.Ga.1958); *Hill v. Sibley Memorial Hosp.*, 108 F.Supp. 739 (D.D.C.1952); *Jeune v. Del E. Webb Constr. Co.*, 77 Ariz. 226, 269 P.2d 723 (1954); *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977); *Suter v. Leonard*, 45 Cal.App.3d 744, 120 Cal.Rptr. 110 (Cal.Dist.Ct.App.1975); *Halberg v. Young*, 41 Haw. 634 (1957); *Koskela v. Martin*, 91 Ill.App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980); *Hoffman v. Dautel*, 189 Kan. 165, 368 P.2d 57 (1962); *Eschenbach v. Benjamin*, 195 Minn. 378, 263 N.W. 154 (1935); *General Elec. Co. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972); *Russell v. Salem Transp. Co.*,

61 N.J. 502, 295 A.2d 862 (1972); *Cox v. Stretton*, 77 Misc.2d 155, 352 N.Y.S.2d 834 (Sup.Ct. 1974); *Duhan v. Milanowski*, 75 Misc.2d 1078, 348 N.Y.S.2d 696 (Sup.Ct.1973); *DeAngelis v. Lutheran Medical Center*, 84 A.D.2d 17, 445 N.Y.S.2d 188 (N.Y.App.Div.1981); *Hastings v. James River Aerie No. 2337—Fraternal Order of Eagles*, 246 N.W.2d 747 (N.D.1976); *Gibson v. Johnston*, 144 N.E.2d 310 (Ohio Ct.App. 1956), *appeal dismissed*, 166 Ohio St. 288, 141 N.E.2d 767 (1957); *Erhardt v. Havens, Inc.*, 53 Wash.2d 103, 330 P.2d 1010 (1958).

2. *Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981); *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690 (1980); *Berger v. Weber*, 82 Mich.App. 199, 267 N.W.2d 124 (1978), *aff'd on appeal*, 411 Mich. 1, 303 N.W.2d 424 (1981).

(1981). In spite of the common elements of the spousal and parental consortium claims, i.e., love, comfort, and companionship, we perceive as significant those elements that are present in the spouse's claim but are absent from the child's claim. Moreover, actions by children for loss of parental consortium create problems of multiplication of actions and damages not present in spousal consortium cases. *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977). We agree with the following observations made by the New Jersey Supreme Court in *Russell v. Salem Transportation Co.*, 61 N.J. 502, 295 A.2d 862 (1972):

> If the claim were allowed there would be a substantial accretion of liability against the tortfeasor arising out of a single transaction (typically the negligent operation of an automobile). Whereas the assertion of a spouse's demand for loss of consortium involves the joining of only a single companion claim in the action with that of the injured person, the right here debated would entail adding as many companion claims as the injured parent had minor children, each such claim entitled to separate appraisal and award. The defendant's burden would be further enlarged if the claims were founded upon injuries to both parents. Magnification of damage awards to a single family derived from a single accident might well become a serious problem to a particular defendant as well as in terms of the total cost of such enhanced awards to the insured community as a whole.

*Id.* at 506, 295 A.2d at 864.

Additional reasons support the distinction between the spousal and parental consortium claims. The segregation of the child's independent recovery away from the control of the parent, which would presumably not be available until the child reaches majority, presents problems not found in spousal consortium claims. In addition, Minn.Stat. § 541.15(1) (1980) tolls the statute of limitations during minority; application of section 541.15(1) would allow the child to sue for loss of parental consortium after the limitations period had run on the parent's personal injury action. In *Thill*, we imposed the requirement of compulsory joinder in actions for spousal consortium to eliminate the risk of double recovery. *See* 284 Minn. at 513, 170 N.W.2d at 869. Section 541.15(1) establishes a roadblock to joinder in parental consortium cases that could be removed only by enactment of legislation creating a uniform limitations period for both the parent's action for personal injuries and the child's action for loss of parental consortium. In sum, we find that the child's claim for loss of parental consortium presents problems not found in the spousal action, and on that ground we choose to treat the child's claim differently.

Strong policy reasons, beyond those already mentioned, argue against extension of liability to loss of consortium of the parent-child relationship. The intangible nature of the child's loss makes it difficult to assess damages and provides a further reason against judicial recognition of the cause of action. *See, e.g., Russell v. Salem Transportation Co.*, 61 N.J. 502, 295 A.2d 862 (1972); *Duhan v. Milanowski*, 75 Misc.2d 1078, 348 N.Y.S.2d 696 (Sup.Ct. 1973). Difficulty in defining and measuring damages leads in turn to a risk of double recovery. There is actually a dual threat of double recovery by the child because juries may already compensate the child for lost economic support through an award to the parent and, in addition, they may already indirectly factor in a child's emotional loss through an award to the parent. A number of courts have based their denial of the child's action in part on this fear of overlapping recovery. *See Hoesing v. Sears, Roebuck & Co.*, 484 F.Supp. 478 (D.Neb.1980); *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977); *Koskela v. Martin*, 91 Ill.App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980); *Russell v. Salem Transportation Co.*, 61 N.J. 502, 295 A.2d 862 (1972). We agree with the remarks made by the New York Supreme Court, Appellate Division:

> Moreover, the infant is provided with an alternative legal remedy of sorts.

"[R]eflection of the consequential disadvantages to children of injured parents is frequently found in jury awards to the parents on their own claims under existing law and practice." * * * This overlap or duplication is a real consequence of recognizing the child's claim, and thus, "courts should be wary of creating additional claims deriving from the same tortious act, particularly where all injuries are localized within the same family unit." * * * Should this type of claim be recognized, the jury would have great difficulty in distinguishing between the losses of the parent from that of the child. [sic] * * * Thus, we believe that the parent's recovery will enable the parent to provide, if necessary, outside care and services for the child.

*DeAngelis v. Lutheran Medical Center*, 84 A.D.2d 17, 445 N.Y.S.2d 188, 193 (1981) (citations omitted).

We also cannot ignore the social burden of providing damages for loss of parental consortium merely because the money to pay such awards comes initially from the negligent defendant or his insurer. Realistically, the burden of paying damage awards will be borne by the public generally in increased insurance premiums or, alternatively, in the enhanced danger that accrues from the greater number of people who may choose to go without insurance. Moreover, we must take into account the cost of administration of a system to determine and pay consortium awards. Since virtually every injury to a parent with minor children would be accompanied by a claim for loss of parental consortium, the expenses of settling or litigating these claims would be sizable. *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977). The social cost resulting from the expenditure of valuable judicial resources in litigating these claims would be substantial.

We are aware that courts should not shirk their duty to overturn unsound precedent and should strive continually to develop the common law in accordance with our own changing society. As we said in *Miller*

*v. Monsen*, 228 Minn. 400, 37 N.W.2d 543 (1949):

Novelty of an asserted right and lack of common-law precedent therefor are no reasons for denying its existence. The common law does not consist of absolute, fixed, and inflexible rules, but rather of broad and comprehensive principles based on justice, reason, and common sense. It is of judicial origin and promulgation. Its principles have been determined by the social needs of the community and have changed with changes in such needs. These principles are susceptible of adaptation to new conditions, interests, relations, and usages as the progress of society may require.

*Id.* at 406, 37 N.W.2d at 547. Accordingly, we do not rely on the rationale of those cases that have relegated this matter to the legislature. *See, e.g., Pleasant v. Washington Sand & Gravel Co.*, 262 F.2d 471, 473 (D.C.Cir.1958); *General Electric Co. v. Bush*, 88 Nev. 360, 368, 498 P.2d 366, 371 (1972); *Duhan v. Milanowski*, 75 Misc.2d 1078, 1084, 348 N.Y.S.2d 696, 703 (Sup.Ct., 1973). The contention that recognition of such a cause of action is a question for the legislature ignores the fact that the action for loss of consortium is a creation of the common law, and that the development of the common law is within the proper sphere of judicial authority and responsibility. This court did not await legislative action to abrogate the common-law rule that prevented a wife from suing for loss of spousal consortium. *See Thill v. Modern Erecting Co.*, 284 Minn. 508, 170 N.W.2d 865 (1969). There is no reason to do so now, were we to decide the action had merit.

Nor do we rely on those cases that have cited the lack of precedent for the child's claim as a persuasive reason for its denial. *See, e.g., Jeune v. Del E. Webb Construction Co.*, 77 Ariz. 226, 269 P.2d 723 (1954); *General Electric Co. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972); *Cox v. Stretton*, 77 Misc.2d 155, 352 N.Y.S.2d 834 (Sup.Ct.1974). Lack of precedent cannot absolve a common-law court from responsibility for adjudicating each claim that comes before it on its own merits. Furthermore, now that

three state courts have granted the child's loss of parental consortium action, *see Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981); *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690 (1980); *Berger v. Weber*, 82 Mich.App. 199, 267 N.W.2d 124 (1978), *aff'd on appeal*, 411 Mich. 1, 303 N.W.2d 424 (1981), this argument is inapposite.

This appeal also presents the question whether the constitutional mandate of equal protection compels recognition of the child's loss of parental consortium action. This mandate requires the law to treat alike those who are similarly situated. *See Schwartz v. Talmo*, 295 Minn. 356, 205 N.W.2d 318 (1973). We do not regard the minor children in this case as situated similarly to the spouses to whom a cause of action for consortium is accorded. As we have already indicated, we view the relationship between spouses, on the one hand, and parent and child on the other, as being essentially different. We also perceive practical and administrative problems attendant to the child's consortium action that do not exist in the spousal action; these problems justify treating the child's claim differently.

Plaintiffs further contend that withholding the asserted cause of action denies equal protection to the class of minor children damaged through injury to parents short of death as against the benefits accruing under the wrongful death act, Minn. Stat. § 573.02 (1980), to the class of minor children entitled to share in the compensation under the act for the loss entailed by the death of a parent. The contention is without merit for two reasons. First, minor children of a deceased parent do not as such constitute the category of compensated parties under the wrongful death act. Rather, that category consists of "the surviving spouse and next of kin" of the decedent. *Id.* § 573.02. Thus, the class of children who recover under the wrongful death act are members of a larger statutory class and there is but a single recovery on behalf of all beneficiaries. Second, surviving children are totally deprived of parental consortium while the plaintiffs here are only partially deprived. When the parent lives,

" 'the tangible aspects of the child's loss can be compensated in the parent's *own* cause of action.' " *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 452, 563 P.2d 858, 866, 138 Cal.Rptr. 302, 310 (1977) (quoting *Suter v. Leonard*, 45 Cal.App.3d 744, 748, 120 Cal. Rptr. 110, 112 (Cal.Dist.Ct.App.1975)). We therefore find no constitutional difficulty in a continuation of the common law rule in this area concomitant with the existence of the remedies provided by the wrongful death act.

In summary, we do not doubt the reality or the magnitude of the injury suffered by plaintiffs. We are keenly aware of the need of children for the love, society, companionship, and guidance of their parents; any injury that diminishes the ability of a parent to meet these needs is clearly a family tragedy and harms all members of that community. We conclude, however, that based on our own precedent and on considerations of public policy and the results that would obtain upon recognition of this type of claim, such as the additional burden placed on society through increased insurance costs and the added expense of litigation and settlement, and in the interest of limiting the legal consequences of a wrong to a controllable degree, a new cause of action on behalf of a child for the loss of parental consortium should not be recognized.

Affirmed.