ALTENBERND, Judge.
The plaintiff appeals from a summary final judgment which denied life insurance benefits because the plaintiff’s husband died ten days after the expiration of his policy. Although the facts of this case are tragic, we affirm the lower court and suggest that this difficult problem should be reviewed by the legislature.
Mr. Kepler was a life insurance agent. In 1972, he purchased a fifteen-year term policy for himself. The policy was effective April 19, 1972, with an expiration date of April 19, 1987. Although the policy was actually issued a few weeks after April 19, 1972, Mr. Kepler arranged for the earlier effective date because it was a day before his birthday and would allow a lower annual premium.
On May 28, 1986, Mr. Kepler suffered a massive heart attack at home. His heart and respiratory function ceased. A fire department rescue team restored Mr. Kepler’s heart and respiratory function, but Mr. Kepler sustained substantial brain damage. Following the heart attack, Mr. Kepler remained in a persistent and vegetative state with brain stem function. In March 1987, a petition was filed in his guardianship proceeding to authorize the termination of food and hydration. An order authorizing termination was entered on April 9, 1987. Although food and hydration were immediately discontinued, Mr. Kepler was not pronounced dead by a physician until April 29, 1987. Mr. Kepler’s death certificate contained that date.[1] The date on his death certificate was ten days after the expiration of the fifteen-year term life insurance policy.
The plaintiff argues that Mr. Kepler actually died on May 28, 1986, when he suffered the massive heart attack and accompanying brain damage. One of the treating physicians did testify that Mr. Kepler died in the sense that his heart function *941 stopped on that date. The doctor, however, admitted that Mr. Kepler was not dead on that date by any strict medical definition of death. In light of his brain stem activity, Mr. Kepler was not dead “for legal and medical purposes” on May 28, 1986. § 382.085, Fla.Stat. (1985).
While the plaintiffs argument would provide a comforting solution in this case, it would create numerous problems in other cases. During the last eleven months of his life, the plaintiff would deem Mr. Kepler dead for purposes of life insurance, but not for purposes of medical insurance, disability insurance, and numerous other legal rights. It is difficult to explain the jurisdiction of a guardianship to enter an order discontinuing “life-prolonging procedures” to a dead man. See § 765.07, Fla. Stat. (1987). We are not empowered to create a legal purgatory which would provide life to Mr. Kepler for those problems requiring life, and also permit death for those problems for which death would be more desirable.
While the life insurance policy involved in this case does not define “death,” we do not find that term to be ambiguous under the specific facts of this case. Legally, Mr. Kepler can die only once. In this case, under any acceptable definition of “death,” Mr. Kepler did not die before the expiration of his life insurance policy. We cannot rewrite the contract between the parties. The legislature has not chosen to regulate this problem. See § 765.12, Fla.Stat. (1987).
The moral and emotional dimensions of this problem should not be underestimated. A family should not be asked to balance their love for a family member against their needs in the future for life insurance proceeds. A family should not be forced by economic difficulties to file a petition for termination which conflicts with their religious or ethical beliefs simply to preserve an insurance benefit. The solution to this problem, however, requires a careful consideration of numerous factual and legal issues which can best be addressed by the legislature. See Clark v. Suncoast Hospital, Inc., 338 So.2d 1117 (Fla. 2d DCA 1976).
Affirmed.
SCHOONOVER, A.C.J., and PARKER, J., concur.

. A death certificate must be filed within three days after the death. § 382.081, Fla.Stat. (1985).