## EMERY *vs.* GOWEN.

4  33
a87  539

A father may have an action for the seduction of his minor daughter, though she resides out of his family ; if he has not divested himself of the right to control her person, or to require her services.

So if, being bound an apprentice, her master turns her away ; or if, with his consent, she returns to her father, and is seduced, the father may have this action.

THIS was an action of trespass on the case for seducing the plaintiff's daughter; and it came before this court upon exceptions filed in the court below.

Emery *v.* Gowen.

It appeared at the trial in that court, that the daughter was then between twenty and twenty-one years of age ;—that at the age of 15 or 16, after the death of her mother, she was bound by her father, with her own consent, as an apprentice to her uncle, till she should be twenty-one years old ;—that she remained with him six or eight weeks, but being severely beaten by him, she left him, with her father's consent as well as with his own ; that she had since that period, with permission of her father, lived at service in different families, particularly in her grandfather's, where she was hired, though for no fixed term of service, at the time that the defendant, by persuasions and promises, seduced her. When she left her uncle she did not expect nor intend to return to her father's house, he not then being a house keeper ; but she went to her grandfather's by his consent, and returned to her father's house as soon as he commenced house keeping again, which was during her pregnancy, in the spring of 1824. At the time she was beaten by her uncle, he was intoxicated and illnatured. It took place at her grandfather's house ; and her father directed her to return to her uncle's which she did ; but remained but a few hours ; soon after which her uncle told her father he would not receive her again, and the father agreed to take care of her himself. The indentures still remained in the possession of the respective parties, uncancelled.

The uncle himself testified that the beating was severe and done with violent passion ; and that he considered that he had by that act broken the indentures on his part ; and had never since claimed any control over her person, or right to her services ; and deemed the writings of no more force than blank paper.

Upon this evidence *Whitman C. J.* ordered a nonsuit, to which the plaintiff filed exceptions.

*Appleton,* in support of the exceptions, contended that upon the facts disclosed the action was maintainable. If the daughter be a minor; the question whether she resided with her father or not is not material ; for though abroad or absent he is still entitled to her service, and may sustain an action of this kind, *Peakes Ca. 55. 233. Reeve's Dom. Rel. 292. 3 Dane's Abr. 504. Martin v.*

*Payne* 9 *Johns.* 387. *Nicholson v. Stryker* 10 *Johns.* 115. The only decision to the contrary is that of *Dean v. Peel* 5 *East* 45, in which the reason assigned by *Ld. Ellenborough* for his opinion is, that the daughter who dwelt in the house of her brother in law at the time of her seduction, had no *animus revertendi* ;—as if the secret intent and determination of the daughter could affect the rights of the father, or change the relation in which she stood to him. But this case is a departure from the prin-ciple of the prior decisions, and is contradicted by those more recent in New-York. See also Mr. *Christian's* note to 3 *Bl. Com.* 143, where in the case of a female, seduced while absent from her father's house, it was held that in support of the action she might be considered as still in the service of her father. It is also observable that in *England* the remedy is sought by action of trespass *vi et armis* ; but in this country by trespass on the case. 5 *Bos. & Pul.* 476. 3 *Wils.* 18.

The existence of the indentures forms no barrier against the maintenance of this suit by the father ; because they were can-celled by the consent of the parties. The uncle himself had expressly renounced all right to control the daughter, and consented to her final departure from his service ; the father, at his request, had agreed again to take her under his protection ; and all parties had for years treated the writings as blank paper. If this does not shew a sufficient cancelling, yet it proves a parol licence to depart forever from his service ; and this, as some authorities hold, is good till revoked ; *Lewis v. Wildman* 1 *Day* 153. *Reeve's Dom. Rel.* 344 ; but others admit that it cannot be revoked. 6 *Mod.* 69, 70. 3 *Vin. Abr.* 27. tit *Apprentice H. pl.* 14. So in an action of covenant against the apprentice, it is a good plea in bar that the master turned him away, and that he had faithfully served up to that time. 3 *Dane's Abr.* 595. And had the uncle brought an action of covenant upon the indentures in the case at bar, it could not, upon the evidence, have been sup-ported. But whether they were cancelled or not, was a question properly for the jury, to whom it ought to have been submitted.

If, however, they were not cancelled, but still existing in all their original force; yet they were void, as they contained stipulations

contrary to the statute, and against the policy of the law. By the statute, males may be bound till the age of twenty-one ; but females only till their arrival to the age of eighteen. But in the present case the daughter was bound till twenty-one ; and the binding not being pursuant to the statute, the parties could derive no benefit from its provisions. *Day v. Everett* 7 *Mass.* 145. Neither could the indentures avail at common law, as they impose restraints upon the female to which the law does not lend its sanctions. By law she may contract matrimony at the age of eighteen, without the consent of her father or guardian ; but by the indentures she cannot do this until twenty-one. It is a contract in restraint of marriage, and therefore void ; 4 *Burr.* 2225 ; and is also within the principle of bonds taken by a sheriff for his fees ; 1 *Esp.* 136, or by a gaoler for his prisoner's board ; 10 *Co.* 100 *b.* 12 *Mod.* 683 ; or bonds in restraint of trade ; which it is against the policy of the law to support, *Mitchell v. Reynolds* 1 *Esp.* 194. *Colgate v. Batchelder Cro. El.* 872. But if the contract was not void *ab initio*, yet it was of no force after the daughter's arrival at the age of eighteen. At that period she was emancipated from service, by the operation of the statute ; the force of all the covenants in the indentures was expended ; and the father's right to her services was restored as before. It was after this period that the injury complained of was done.

But if the parent, at the time of the seduction, was not legally entitled to the services of his daughter, yet this action may be maintained. The loss of service is merely a fiction of law; the real ground of the action being the disgrace of the family, and the injury to their feelings. It is a rule founded in common sense, as well as in strict justice, that fictions of law shall not be permitted to work injustice. Where the daughter is bound at service and living with her master, a rigid adherence to the rule that the loss of service is the ground of action, would prevent the father's recovery ; but if the foundation of the remedy is laid in the other and better principle, the apprenticeship of the daughter would form no objection. *Reeve's Dom. Rel.* 291. And it seems unnecessary, and even absurd, to require proof of any service to the

Emery v. Gowen.

father, since this often forms no part whatever of the ground of damages, which are frequently the largest where the least service is proved. In the case put by *Spencer J.* of a gentleman's daughter at a boarding school, the relation of master and servant, and the loss of service, are purely fictitious. The actual damage is precisely the same as if the daughter were an indented apprentice ; and if the action lies in the one case, why not in the other ? The father is entitled to this action because he is the protector and guardian of the morals and virtue of his child. And if he has, for a time, relinquished his right to her services, are his obligations and his affections suspended? Must he be supposed insensible to circumstances so deeply affecting his own happiness and the peace of his family ? Shall this action be given to a person of elevated rank, whose daughter was absent for the purposes of education ; and be denied to one of a grade less elevated, whose child was removed from him to be instructed in subjects pertaining to humble life ; but to whom an unblemished reputation and virtuous character were equally dear ? Any person standing in the relation of a parent, may support this action ; as, an uncle, or an aunt ; *Edmondson v. Machell* 2 *D & E.* 4, 5, and if this remedy is thus given where there is no obligation to support, no legal claim to service, and no actual loss of service ; does not the case of a parent, with its various, great, and continued obligations, present a claim which the law will protect ? 2 *Selw. N. P.* 1001. 3 *Rep.* 119. 2 *Phil. Ev.* 160.

*J. Shepley* and *D. Goodenow,* for the defendant, insisted that in all cases of this kind, the loss of service was a material allegation, and therefore must be proved. To this they cited 1 *Chitty Pl.* 47. 2 *Chitty Pl.* 267, note u. 2 *Phil. Ev.* 157. 3 *Selw. N. P.* 967. *Irwin v. Dearman* 11 *East* 22. 3 *Bl. Com.* 142, note 14. *Dean v. Peel* 5 *East* 49. 2 *Ld. Raym.* 1032. 3 *Burr.* 1878. 2 *D. & E.* 166. *Nicholson v. Stryker* 10 *Johns.* 115. If it were not so, the father might have an action for slandering his daughter; or for any injury to her person or character destructive of his own happiness. It is true that proof of slight acts of service is deemed sufficient ; but to require some proof, shews that the relation

of servant must actually exist. If wounded feelings alone could support the action, without this relation, it might be maintained by any relative, as a brother or sister, and even by each of them.

At the time of the seduction the father was not entitled to the services of the daughter ; but they were due to the uncle, who alone has a right to maintain the action. The indentures were not cancelled, either by any of the methods recognized in books ; or by the conduct of the parties ; for there was no concurrent act to that effect. The father had done nothing to impair his own rights against the uncle ; and the license given by the latter could be of no avail, unless in an action by him against the daughter for leaving his service. Nor can his single act of cruelty have this effect. The remedy for that, if any existed, was by complaint and due process under the statute respecting apprentices ; or, at most, by an action on the covenants ; for they are manifestly independent of each other. *Powers v. Ware 2 Pick.* 451.

If the indenture was not good under the statute, to entitle the master to the peculiar remedies therein provided ; yet it was valid at common law, as an assignment of the services of the daughter, to which the assignee was still entitled. *Day v. Everett* 7 *Mass.* 145.

*Greenleaf* in reply, maintained that where the indenture of apprenticeship was void, all the covenants made to secure performance, being but ancillary covenants, were void also. *Guppy v. Jennings* 1 *Anstr.* 256;—and that these indentures were void *in toto*, because they were against the provisions of a statute ; though if some of the covenants had only been void at common law, the others might have stood. *Norton v. Sims Hob.* 12. *Lee v. Coleshill Cro. El.* 529. *Laying v. Paine Willes,* 571. 5 *Vin. Abr.* 98. *Condition Y. pl.* 7, 8. *Wheeler v. Russell* 17 *Mass.* 258.

The only cases in which actual service is proved, are those in which the daughter was over twenty one at the time of the injury; as was the case in *Nicholson v. Stryker.* And even there, proof of menial service is not required, any act of duty being sufficient. But where the party was under twenty one, as was the case here, service is always presumed.

WESTON J. at the succeeding term in *Cumberland*, delivered the opinion of the court, as follows:

The foundation of this action is the supposed loss of service to the father, occasioned by the seduction. But in the estimation of damages, the wounded honor of his family and the laceration of his parental feelings are principally regarded. When the daughter is of age, it must appear that she resided in her father's family; and some acts of service, however slight, must be proved, in order to maintain the action. If the child be under twenty-one, no acts of service need be proved.

In the case of *Dean v. Peel* 5 *East* 45, the action was not maintained; the child, though a minor, not residing in her father's family; but the case appears to have turned rather upon the fact that she had no intention of returning, than upon the circumstances of her happening to reside elsewhere. *Spencer* J. in delivering the opinion of the court, in *Martin v. Payne* 9 *Johns.* 387, says, that he considers this case of *Dean v. Peel* as the only one, which has ever denied the right of the father to maintain an action for debauching his daughter, while under age ; and he deems it a departure from all former decisions on this subject. And he clearly held, upon a view of the authorities, that where the daughter is a minor, though she resides out of the family, if the father has not divested himself of the power to reclaim her services, she remains his servant *de jure*, though not *de facto*, and the action is maintainable. And we are satisfied upon examination, that the weight of authority is in favor of this position.

The decision of this cause will depend then upon the question, whether the father, at the time of the seduction, had so transferred his parental rights, as to have no control over his daughter. If he had not, she being a minor, although not actually residing at the time in the family, the action is maintainable.

It is contended that in this case, the father having by indenture assigned the services of his daughter, with her consent, when she was fifteen or sixteen years of age, to her uncle, until she should be twenty-one, his control over her had ceased. We are very clear that this was not a binding out under the statute; it extend-

ing beyond the period of eighteen years ; and that therefore neither of the parties could be entitled to the special remedies therein provided. If the father refused to suffer the child to serve, or the child had left his service without his permission and against his will, the uncle had no means of getting possession of the person of the child; but his only remedy would be a suit at law against the father, upon the contract.

The statute does not however make void indentures, or assignments of the services of a child, not executed in the manner prescribed. They may be good at common law, during minority; and so they were held to be, by *Parsons C. J.* in the case of *Day v. Everett* 7 *Mass.* 145. If in pursuance of the indentures, although they did not conform to the statute, the daughter had gone into the service of the uncle, and had continued with him up to the period of the seduction; although the uncle, standing *in loco parentis*, might have maintained this action, the father could not. But it appears that the uncle, being conscious that he had treated his niece harshly and improperly, by acts of unjustifiable violence, and conceiving that the indentures were thereby broken, permitted her to leave him, after she had continued with him only six or eight weeks, and refused to receive her again; and that in point of fact she has never resided with him since. And although the uncle still retained the indentures in his possession, yet he told the father that he considered them at an end, and thereupon he consented to receive his daughter back again, and she has since been under his direction; working at different places by his consent ; and being, by his permission, at her grandfather's, at the time of the seduction.

But it is insisted that the indentures must be considered as still in force in contemplation of law, having been executed under seal; and that they could not therefore be legally discharged by parol. After what had taken place by mutual consent between the parties, it might be difficult for either party to maintain an action upon the covenants; and if in strict law, and upon technical principles, it could be done, nothing more than nominal damages could be recovered. If the parties regarded the contract as at end, and waived all remedies under it, we are not aware

upon what ground third persons can insist upon its existence. The father had the control of his daughter in fact; and no person certainly, except the uncle, could question his right thereto; which he is so far from doing, that he expressly declined receiving her, and had given up for many years all interference with her. But suppose the indentures still in force, and that the father not only had a right to insist, but did insist, upon the performance of the covenants contained in the indentures on the part of the uncle ; he could only recover damages for the breach of them; having no legal means of enforcing specific performance. In the mean time, the uncle refusing to receive and protect his niece, and to fulfil towards her the parental duties, she is not to remain a vagabond in the street, and the father turned over to his contract; but the parental duties again necessarily devolve upon him, and, as incident thereto, and to enable him to discharge them, he is again reinstated in his parental rights. In every view which we can take of this case it appears to us that, at the time of the seduction, the plaintiff did control, and had a right to control, the person of his daughter, and that he may therefore legally maintain this action. The exceptions are accordingly sustained; the nonsuit is set aside; and the action is to stand for trial, at the bar of this court.