**Patricia DUREPO et al.**

v.

**Eric S. FISHMAN.**

Supreme Judicial Court of Maine.

Argued June 3, 1987.

Decided Oct. 28, 1987.

Joel C. Martin (orally), Thomas A. Cox, Petruccelli, Cohen, Erler & Cox, Portland, for plaintiffs.

Jonathan W. Brogan (orally), David C. Norman, Norman, Hanson & DeTroy, Portland, for defendant.

* Roberts, J., sat at oral argument and participated in the initial conference, but participated no further.

1. See *Hibpshman v. Prudhoe Bay Supply, Inc.,* 734 P.2d 991 (Alaska 1987); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d

Before McKUSICK, C.J., and NICHOLS, ROBERTS *, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

This case invites us to declare for the first time that in Maine a minor child has an independent right of action for loss of parental consortium against a third person who negligently causes physical injury to his mother. We decline that invitation.

Acting solely on behalf of their minor children Chris and Travis, Patricia Durepo and her husband sued defendant Eric Fishman, a practicing physician, for the children's loss of their mother's "love, society, companionship, guidance and care" by reason of physical injuries suffered by the mother from defendant's alleged medical malpractice. The Superior Court (Aroostook County) dismissed the children's complaint, pursuant to M.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. We affirm.

"Two characteristics of the claim at issue here are that the injury to the plaintiff [children] occurs as a consequence of an injury to another person, and that this consequential injury is to plaintiff[s'] psychic interests rather than to [their] physical person or tangible property." *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or. 543, 548, 652 P.2d 318, 321 (1982). In other jurisdictions the majority rule by a wide margin is that stated in *Restatement (Second) of Torts* § 707A (1977) rejecting a child's independent cause of action for that indirect injury to his psychic interests. 59 Am.Jur.2d *Parent and Child* § 96 (1987). *See also Sawyer v. Bailey,* 413 A.2d 165, 168 (Me.1980) (dictum); *Kershner v. Beloit Corp.,* 611 F.Supp. 943, 946–47 (D.Me. 1985). Although some recent cases have departed from the *Restatement* rule,[1] we do not find any compelling legal principles sweeping us along to permit in Maine a

690 (1980); *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981); *Hay v. Medical Center Hosp.,* 145 Vt. 533, 496 A.2d 939 (1985); *Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190 (1984); *Theama v. City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513 (1984).

child's independent recovery in these circumstances. On the contrary, respect for the differing functions and capabilities of the legislative and judicial branches impel us to conclude that on this particular issue we should stay our hand and defer to the legislature's consideration of the public policy issues involved in the proposed extension of tort liability.

It is true of course that this court would not exceed the scope of its powers as a common law court by newly creating for Maine a child's cause of action for the loss of parental society and affection. *See Potter v. Schafter*, 161 Me. 340, 341, 211 A.2d 891, 892 (1965). *See also MacDonald v. MacDonald*, 412 A.2d 71, 74 n. 4 (Me.1980). But the possession of power does not by itself justify its use. *Cf. DeAngelis v. Lutheran Medical Center*, 84 A.D.2d 17, 24, 445 N.Y.S.2d 188, 194 (1981), *aff'd*, 58 N.Y. 2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (1983). We decline to expand dramatically the common law of Maine in this area in which judicial decree is no substitute for the exhaustive gathering of socio-economic facts and the public debate upon the import of those facts that would occur before the Maine Legislature enacted so sweeping an embellishment on the existing tort law of this state.

As appellants themselves accurately point out, "[a]t its heart, this case involves a question of public policy." Resolution of that question—whether existing tort liability should be extended to indemnify children for the psychic harm suffered when their parents are negligently injured—turns on a number of policy judgments that can be soundly made only after full consideration of legislative or nonadjudicative facts. Those judgments the elected legislature, directly accountable to the citizens of Maine, is far better situated to make than is the unelected judiciary. As the Supreme Court of Oregon observed in an opinion refusing to recognize the cause of action for loss of parental consortium:

> There is another reason not to explain the court's understanding of the existing state of the law by the court's views of desirable social policy. Legislators, unlike judges, may change the law at any time ... simply upon changes in personnel and in the political agenda. That is what elections and legislative debates are for.... [P]roponents or opponents of a social policy ... should be free to debate the merits untrammeled by a court's arguments why its view of the existing law represents the better policy.

*Norwest v. Presbyterian Intercommunity Hospital*, 293 Or. at 553, 652 P.2d at 323–24. The legislature, unlike this court, is institutionally equipped to gather information on the many relevant questions as, for example, (i) whether there is any practical necessity for creating a separate cause of action for a child whose parent has been negligently injured, (ii) what limiting principles as, for example, the age of the child should circumscribe such a cause of action, (iii) what impact would such a cause of action have on insurance rates and other costs to the general public, and (iv) what, if any, limit on allowable damages should be imposed as a matter of social policy. Once the legislature has assembled the answers to these questions, along with all other relevant legislative facts, and has publicly debated the ultimate issue, it can render what is essentially a political judgment: Should Maine have a cause of action of the sort urged here by the appellant plaintiffs and, if so, what should be its contours?

Some proponents of this cause of action argue that it would be anomalous for us to decline to expand the common law to permit a child to recover for loss of consortium when his injured parent remains alive, considering the fact that our Maine wrongful death statute [2] provides a certain

---

**2.** To the extent pertinent to this discussion, the Maine wrongful death statute, 18-A M.R.S.A. § 2-804(b) (Supp.1986), provides as follows:

*The jury* may give such damages as it shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the persons for whose benefit the action is brought, and in addition thereto shall give such damages as will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable funeral expenses, and in addition thereto *may give damages not exceeding $50,000 for the*

amount of recovery of that same nature if the injured parent dies. Rather than creating an anomaly, the existence of the wrongful death statute as a result of careful legislative decision-making in original enactment and subsequent amendment[3] demonstrates the practical wisdom of leaving to the legislature the line-drawing job of defining the scope of tort liability in this area. When as here that job depends so overwhelmingly on socio-economic facts and questions of desirable social policy, rather than on the application of established legal principles, the legislature, not the court, should draw those lines.

The entry is:

Judgment affirmed.

SCOLNIK and CLIFFORD, JJ., concur.

NICHOLS, Justice, with whom GLASSMAN, Justice, joins, dissenting.

I respectfully dissent. I would recognize the right of these minor children to pursue their action for the loss of the comfort and companionship of their mother against a third person who, they allege, negligently caused her injury. Today's majority asserts that the line-drawing depends so overwhelmingly on socio-economic factors that it should shy away from the task. This is indeed a weak reed to support the denial of any remedy for these children's significant loss.

In the first place, we should not forget the guarantee made to the children in the Declaration of Rights in the Maine Constitution:

> Every person for an injury done him in his person ... shall have remedy by due course of law....

(Me. Const., art. I, § 19.) Certainly the law of torts has no higher purpose than "to afford compensation for injuries sustained by one person as the result of the conduct of another." *Prosser and Keeton on Torts* 6 (5th ed. 1984).

In the second place, this Court historically has not hesitated to deal with similar questions of tort liability and courageously has recognized causes of action in areas where the law previously afforded no precedent. Illustratively, in *Davies v. City of Bath,* 364 A.2d 1269, 1273 (Me.1976), our Court abrogated the doctrine of governmental immunity with all its economic consequences. In *Estate of Berthiaume v. Pratt,* 365 A.2d 792, 794 (Me.1976), our Court did not hesitate to declare that a violation of one's right to privacy was an actionable tort, notwithstanding manifold questions of desirable social policy. Even though in *Black v. Solmitz,* 409 A.2d 634, 639 (Me.1979), our Court overruled the doctrine of parental immunity earlier recognized in *Downs v. Poulin,* 216 A.2d 29, 30 (Me.1966), in neither case did the Court see a need for the Legislature to debate publicly the question and then draw the lines of

---

loss of comfort, society and companionship of the deceased to the persons for whose benefit the action is brought....

(Emphasis added) The "persons for whose benefit the [wrongful death] action is brought" include a class as broad as heirs of the decedent in absence of a surviving spouse and minor children. *Id.*

3. The Maine wrongful death statute contained no provision for the recovery of damages "for the loss of comfort, society and companionship of the deceased" until P.L.1967, ch. 369, which even then did not include a child in the class of its beneficiaries and which limited aggregate recovery to $5,000. The legislature increased that aggregate limit to $10,000 in P.L.1969, ch. 266. Not until P.L.1977, ch. 192, did the legislature adopt the forerunner of our present 18–A M.R.S.A. § 2–804 (quoted in part in note 2),

which for the first time permitted damages for psychic loss by children in a wrongful death action; but under that 1977 enactment any recovery for the psychic harm suffered by *all* beneficiaries of the deceased was limited to $10,000 in the aggregate. The legislature in P.L.1981, ch. 213, raised the ceiling on that aggregate recovery to the present $50,000.

It is also significant that the legislature in the wrongful death statute has provided that every action thereunder shall be brought by the personal representative of the deceased, thereby preventing any tolling of the statute of limitations under 14 M.R.S.A. § 853 (Supp.1986) even though the beneficiaries of any claim for loss of parental consortium are minors. No comparable device for avoiding stale claims by a child after coming of age is available on a court-created cause of action.

liability in tort. Instead, the Court met those questions head-on.[1]

In the third place, the right of these little children to seek a remedy for their loss is one that should be judicially recognized now. Maine should be in step with the times.

Most courts that over the years have considered this issue may have declined to recognize a child's cause of action for loss of parental consortium,[2] yet a new trend is emerging. A majority of the courts that since 1980 have addressed this issue have recognized a child's right to recover for loss of parental consortium.[3] Additionally, a substantial number of commentators support the recognition of this cause of action.[4]

Some argue, nevertheless, that this cause of action should not be recognized because (1) litigation and multiple claims may increase; (2) insurance costs may increase; (3) damages are remote and uncertain; (4) there is a danger of double recovery by parent and child; and (5) the judiciary should defer to the legislature. The arguments advanced by those courts and commentators who favor recognizing this cause of action are much more persuasive than are these contentions.

First, increased litigation, multiple actions and increased insurance costs may, of course, result when any new cause of action is recognized. These are not unique to this particular claim for relief. *Hay v. Medical Center Hosp.*, 145 Vt. at 539, 496 A.2d at 943 (1983); *Theama v. City of Kenosha*, 117 Wis.2d at 524, 344 N.W.2d at 521 (1984). The rights of any new class of plaintiffs should not be summarily dismissed because our courts are already overcrowded or because it is possible insurance costs may rise. *See Berger v. Weber*, 411 Mich. at 14–15, 303 N.W.2d at 426 (1981). Such fears are inadequate to deny recognition to parental consortium claims. Each claim should be carefully examined on its own merits. Moreover, concern for multiple claims and protracted litigation can be minimized by requiring a joinder of the children's claims with the parent's claim. *Weitl v. Moes*, 311 N.W.2d at 270 (1981); *Ueland v. Reynolds Metals Co.*, 103 Wash.2d at 137, 691 P.2d at 194 (1984).

---

**1.** *See also Rowe v. Bennett*, 514 A.2d 802, 807 (Me.1986) (created an exception to the rule requiring an underlying tort in an action for negligent infliction of emotional distress).

**2.** *See inter alia, Pleasant v. Washington Sand & Gravel Co.*, 262 F.2d 471 (D.C.Cir.1958) (District of Columbia law); *Hoesing v. Sears, Roebuck & Co.*, 484 F.Supp. 478 (D.Neb.1980) (Nebraska law); *Gray v. Suggs*, 292 Ark. 19, 728 S.W.2d 148 (1987); *Borer v. American Airlines*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977); *Zorzos v. Rosen*, 467 So.2d 305 (Fla.1985); *W.J. Bremer Co. v. Graham*, 169 Ga.App. 115, 312 S.E.2d 806 (1983); *writ denied*, 252 Ga. 36, 312 S.E.2d 787 (1984); *Hoffman v. Dautel*, 189 Kan. 165, 368 P.2d 57 (1962); *Salin v. Kloempken*, 322 N.W.2d 736 (Minn.1982); *Bradford v. Union Elec. Co.*, 598 S.W.2d 149 (Mo.App.1979); *General Elect. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972); *Russell v. Salem Transp. Co.*, 61 N.J. 502, 295 A.2d 862 (1972); *DeAngelis v. Lutheran Medical Center*, 84 A.D.2d 17, 445 N.Y.S.2d 188 (1981), *aff'd*, 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (N.Y.1983). *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 652 P.2d 318 (1982). *See also Restatement (Second) of Torts* § 707A (1977).

**3.** *See Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991 (Alaska 1987); *Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981), *overruled in part by Audubon-Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R. Co.*, 335 N.W.2d 148 (Iowa 1983); *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690 (1980); *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981); *Hay v. Medical Center Hosp.*, 145 Vt. 533, 496 A.2d 939 (1985); *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190 (1984); *Theama v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513 (1984).

**4.** Comment, *Damages: Loss of Parental Consortium*, 30 ATLA L.Rep. 253 (1987); Comment, *Loss of Parental Consortium: Why Children Should be Compensated*, 18 Pac.L.J. 233 (1986); Comment, *Who Should Recover for Loss of Consortium*, 35 Me.L.Rev. 285 (1983); Love, *Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship*, 51 Ind.L.J. 591 (1976); Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent*, 56 B.U.L.Rev. 722 (1976); Comment, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal*, 13 San Diego L.Rev. 231 (1975); Note, *The Child's Cause of Action for Loss of Consortium*, 5 San.Fern.V.L.Rev. 449 (1977); *Prosser and Keeton on Torts* (5th ed. 1984) § 125, at 896–897.

Second, concern over the speculative and remote nature of damages is also not unique to claims for loss of parental consortium. It applies as well to other types of personal injury actions. Patently, the damages for loss of parental consortium are no more speculative or difficult to calculate than damages for the loss of spousal consortium, wrongful death, emotional distress or pain and suffering. *Hibpshman v. Prudhoe Bay Supply, Inc.,* 734 P.2d at 996 (1987); *Theama,* 117 Wis.2d at 520–522, 344 N.W.2d at 519–520. Surely this is not an adequate reason to deny an injured child relief.

Third, the potential for double recovery can be alleviated by allowing the parent to recover for pecuniary losses, such as substitute child care services or income that would have been used for the child's benefit, and limiting the child's damages to the loss of the parent's society and comfort. *Hibpshman,* 734 P.2d at 996; *Theama,* 117 Wis.2d at 524–526, 344 N.W.2d at 521–522. Once properly instructed, a jury can differentiate between the parent's loss and the child's loss.

Fourth, deference to legislative judgment, while often appropriate, is anomalous here. Recovery for a husband's loss of consortium was judicially recognized without legislative action. Our Court also recognized a father's right to recover damages resulting from the loss of services of an unemancipated minor child. *See, e.g., Emery v. Gowen,* 4 Me. 33 (1826); *Kennard v. Burton,* 25 Me. 39 (1845); *Beaudette v. Gagne,* 87 Me. 534, 33 A. 23 (1895).[5] Although our Court deferred to the Legislature when confronted with the issue of a wife's right to recover for a similar loss, we later noted that "[t]he decision was basically wrong in its intimations that action by the judiciary to change the common law where there is involved a 'collision between the principle of *stare decisis* and contemporary legal philosophy' is 'to usurp legislative authority.' " *MacDonald v. MacDonald,* 412 A.2d 71, 74 n. 4 (Me. 1980) (quoting *Potter v. Schafter,* 161 Me.

340, 342–43, 211 A.2d 891, 892 (1965)). To abrogate this responsibility today is to "shirk [our] duty and retreat into the safe haven of deference to the legislature." *Hay,* 145 Vt. at 543–544, 496 A.2d at 945 (1983).

Moreover, it is incongruous to acknowledge a right to recover for this loss when suffered by a parent or a spouse but to deny it when sustained by a child. The losses a child suffers when a parent is injured are the same in many respects as the losses suffered by a husband or wife when a spouse is injured. The elements of love, society, affection, guidance, companionship and service exist in both relationships. *Berger,* 411 Mich. at 14, 303 N.W.2d at 426. A child, in fact, is affected in a more fundamental manner.

> [W]hile an adult is capable of seeking out new relationships in an attempt to fill in the void of his or her loss, a child may be virtually helpless in seeking out a new adult companion. Therefore compensation through the courts may be the child's only method of reducing his or her deprivation of the parent's society and companionship.

*Theama,* 117 Wis.2d at 516, 344 N.W.2d at 516. Judicial acknowledgment of this fact would comport with the more recent recognition of children as persons deserving of legal rights and protections. *Theama,* 117 Wis.2d at 516, 344 N.W.2d at 517 (citing *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)); *Tinker v. Des Moines School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Board of Educ. v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

Adult children as well as minor children have a statutory right in Maine to recover for the loss of comfort, society and companionship of a deceased parent. 18-A M.R.S.A. § 2-804(b) (Supp.1986). How anomalous it is to deny that relief to these minor children when a parent may remain severely disabled or even comatose! A child's loss is similar in both situations.

---

5. Although at common law this type of action was primarily to recover for loss of services, the "wounded honor of the family" and the "laceration of ... parental feelings" were also considered in the estimation of damages. *Emery v. Gowen,* 4 Me. 33, 39 (1826).

*Berger,* 411 Mich. at 15, 303 N.W.2d at 426; *Hay,* 145 Vt. at 535, 496 A.2d at 941; *Ueland,* 103 Wash.2d at 133, 691 P.2d at 192. Whenever the injury to the parent is relatively minor, the fact-finder can determine what, if any, injury resulted to the child. As long as the injury is severe enough to deprive the child of his parent's companionship and guidance, the parent should not have to die for the child to gain relief.

In sum, a Court such as ours that historically has faced difficult questions and has responsibly adapted the common law to meet new social demands should not, when confronted with today's question, retreat into the safe haven of deference to the legislature. Rather, the Court should draw the lines of liability anew.

If these children can establish that as a result of the Defendant's tortious conduct they sustained the injuries they allege, they should have their remedy in court. Defining the limits of tort liability does not, I submit, require a "political judgment." Neither does it pose a question that must be put aside for legislative debate. It did not when our Court expanded tort liability in the instances cited herein. It does not today. For these minor children the time is now.

I would vacate the judgment below.